[No. 395.   February 12, 1890.]

## GAUDALUPE S. DE GARCIA y PEREA, Appellee, v. MARIANO BARELA, Appellant.

Will—Bill in Equity to Set Aside Settlement of Executor, Etc.— Constitutionality of Section 562, Compiled Laws, New Mexico, 1884—Jurisdiction of Supreme and District Courts.—By section 1868 of the organic act, providing that "the supreme and the district courts, respectively, of any territory, shall possess chancery as well as common law jurisdiction," general jurisdiction is conferred on those courts over cases of administration, and section 562, Compiled Laws, 1884, in so far as it attempts to vest the probate courts with exclusive original jurisdiction in such cases, is in plain contravention of that act and void.

Id.—Bequest of Personal Property, Construction of.—A clause in a will bequeathing to the wife of the testator "all articles of goods in my house, personal furniture, household furniture, and all that exists therein," includes a sum of money contained in an iron box and safe in the house, known to be there only by the testator himself, and not mentioned in the will.

Id.—Executor, Final Settlement of—Fraud.—Where the executor of an estate fails to account in his inventory for any money or property in his possession belonging to the estate, and obtains a final settlement, by presenting to the court a receipt in full from the legatee of all claims against the estate, procured by improper influences, such receipt and settlement are void and may be set aside for fraud.

Id.—Codicil, Attestation of.—Section 1380, Compiled Laws, 1884, requires that a will shall be attested by three or more witnesses. A like number is required to constitute a valid attestation of the codicil. Jar. Wills, sec. 93.

Appeal, from a decree in favor of complainant, from the Third Judicial District Court, Dona Ana County.   Decree affirmed.

The facts are stated in the opinion of the court.

Wade & Rynerson and Catron, Knaebel & Clancy for appellants.

S. B. NEWCOMB for appellee.

WHITEMAN, J.—This is a suit in equity, commenced in the district court of Dona Ana county, by Guadalupe S. de Garcia y Perea, widow of Pedro Garcia y Perea, who died February 25, 1887. The decedent left a will written in the Spanish language, of which the following, it is admitted in the record, is a correct translation:

"Last will of Pedro Garcia y Perea. Know all men by these presents, that I, Pedro Garcia y Perea, on this twenty-ninth day of January, A. D. one thousand, eight hundred and eighty-six, write my last will as my voluntary act under the following rules. (1) I declare that my nephew, Mariano Barela, is the administrator of all my estate, of real estate and personal property. (2) I declare that the house, and now my residence, composed of all the square bounded on the east with the second public street, and on the west bounded with Water street, I grant to my wife, Guadalupe Perea. (3) I also grant to my wife, Guadalupe y Perea, the land and property near the railroad depot, and generally known as 'Juan Bautista Armijo and Manuel Lopez,' as it appears in the deed. (4) I also grant to my wife, already referred to, all articles of goods in my house, personal furniture, household furniture, and all therein exists. (5) I also grant her ten cows picked from my property. (6) I grant in favor of the Las Cruces Church, five hundred ewes. (7) My administrator is instructed to pay $50 in money for masses for my deceased wife, Romaldita, in case of her death. (8) All notes that may be due me, accounts, claims of whatever nature they may be, my administrator is authorized to collect; and whatever he does shall be sustained. (9) I grant to Cruz Garcia one house, formerly Mariano Molinar's, situated near the Protestants', as it appears by the deeds. I also

grant to Cruz Garcia one bay mare that Conception Martinez has, and ten cows, two asses, burros o' burras (male or female), as they may be. (10) I grant to Adilaida Flore one hundred ewes. (11) I grant to Gandelaria Garcia one hundred ewes. (12) I grant to Clemente Garcia one hundred and fifty ewes. (13) I grant to Martin Garcia five cows. (14) I grant to Julian Albillar one hundred ewes. (15) I leave to Guadalupe, my wife, one small wagon and two mules. (16) To Jose Angel Sisneros, I leave one hundred ewes. (17) To Clemente Garcia, I leave two asses. (18) $200 in money that Jose Maria Padilla owes me, I grant to my niece, Juanita Barela. (19) To Teresa Chave, I leave fifty ewes. (20) All the other property that is not here specified, I grant to my sister, Rafaela Barela, and to my nephew, Mariano Barela. In witness whereof, I sign this myself, in the presence of witnesses, in the town of Las Cruces, this 29th day of January, A. D. 188—.

(Signed) "Pedro Garcia $\overset{\text{his}}{\text{X}}$ y Perea.
$\phantom{(Signed) "Pedro Garcia X}$ mark

"In presence of
　　　　"Jacinto Armijo,
　　　　"Nestor Armijo,
　　　　"George Butschofsky,
　　　　"Pedro Lassaigne.

"At the reading of the will, the testator directs that his administrator do sell five hundred ewes, and that they be distributed amongst honest and needy persons, at the will of the administrator.

(Signed) 　　　　"Pedro Garcia y Perea.
"In presence of the same witnesses:
　　　　"Jacinto Armijo,
　　　　"Nestor Armijo,
　　　　"George Butschofsky,
　　　　"Pedro Lassaigne."

"Territory of New Mexico, county of Dona Ana. On this twenty-ninth day of January, A. D. 1886, personally appeared before me the undersigned, having

been duly commissioned, qualified, and acting notary public, Pedro Garcia y Perea, whom I personally know to be the same person who signed the foregoing testament and last will in the presence of the witnesses mentioned, and that he signed it in my presence and declared that he did it voluntarily for the uses and purposes therein stated.

"In witness whereof I sign this in the town of Las Cruces, the month and year aforesaid.

[SEAL]                    "JACINTO ARMIJO,

"Notary public within and for Dona Ana county, New Mexico.

"Instructions to the administrator, Mariano Barela: I further declare that my sister, Rafaelita Barela, and my nephew, Mariano Barela, are heirs; and I grant them the following properties:  Certain real estate situated in La Mesilla, called a Terreno; the property bought from the Perez, as it appears by the deeds; the properties known as my ranch, as it appears by the deed of purchase, and in the U. S. office; the balance of the stock and animals after paying the donations this day made; all the notes and properties, as it appears by the deeds and my books, except the donations made. I declare that the following witnesses be subpoenaed in the United States office:  Mauricio Gamboa, Jose A. Sisneros, Jose Ma Domingues, and Manuel Trujillo,—to prove the right in the U. S. office in the application made by Julian Albillar.

"PEDRO GARCIA Y PEREA.

"In presence of JACINTO ARMIJO, GEORGE BUTSCHOFSKY.

"I declare that there is due me:

| | |
|---|---|
| S. B. Newcomb | $500 00 |
| Eugenio Moreno paid part | 20 00 |
| Padre Tenorio | 75 00 |
| Barbaro Lucero | 250 00 |
| (The debts of Jacinto Armijo, J. J. Preciado, J. N. Montes, are forgiven.) | |
| D. Woods | 80 00 |

"PEDRO GARCIA Y PEREA.

"Jan. 29, 1886.

"In presence of JACINTO ARMIJO, GEORGE BUTSCHOFSKY."

The will, after providing for a number of legacies, made Rafaela Barela and Mariano Barela, sister and nephew of the testator, respectively, residuary legatees. The complainant's claims, involved in this case, all arise under the second, third, and fourth paragraphs of the will. On the twenty-eighth of February, 1887, the will was probated, and defendant Mariano Barela appointed executor. On the twenty-first of September, 1887, while the administration of the estate was still pending in the probate court, the complainant filed her original bill of complaint against Mariano Barela as executor, and individually, Rafaela Barela, William H. H. Llewellyn, and Thomas Brannigan. Subsequently the case was dismissed as to Llewellyn and Brannigan, and an amended bill was filed on October 12, 1887, against the other defendants. A reamended bill was filed November 2, 1887, which also made Demetrio Chavez, the probate judge, a defendant. At the time of the filing of the reamended bill the administration of the estate had been closed up, and an order made by the probate court discharging the executor from any further liability as such, and also discharging the sureties upon the bond of the executor.

The reamended bill sets up complainant's marriage with the decedent, his death, the execution of the will aforesaid, its admission to probate, and the appointment of Mariano Barela as executor. It also avers that two codicils to the will were approved at the same time as the will, which, she avers, were never executed by the decedent, and are void because not properly executed; that she had no knowledge of the existence of such codicils, and no notice of the attempt to have the same probated until long after the time when she might or could have availed herself of the right and benefit of an appeal from the action of the probate court in the premises; that at the time of the death of the testator, he was entirely free from debt,

and that the estate came into the hands of Mariano Barela, executor, unincumbered; and that the said executor failed and refused to file in the probate court any schedule or inventory of the property coming into his hands as such executor. She further avers that by the terms of said will the testator devised to her a certain house and lot situated in the town of Las Cruces, and particularly described in the will, together with everything contained in said house and upon said premises, and also certain other real estate situated in Dona Ana county, near the Las Cruces depot of the Atchison, Topeka & Santa Fe Railroad, known as the "Juan Bautista Armijo and Manuel Lopez properties," as described in the deeds to said property, and also ten cows, two mules, and a wagon; that the real estate mentioned in the first codicil to said will as the real estate bought of Perez is a part of the Juan Bautista Armijo tract, which was devised to her by the decedent, and that under the said first codicil the said Mariano Barela claims said land; and that Demetrio Chavez is the probate judge of Dona Ana county, who admitted the said codicil to probate. She further avers that, at the date of the death of her husband, there were, among other things, in the house and lot devised and bequeathed to her, an iron box and an iron safe which belonged to the testator, and which, together with their contents, became her property under the terms of said will, and also that there were on and contained in said premises so devised to her a buggy and two horses, which became her property by the terms of said will; that shortly after the death of her husband, and while she was still suffering and prostrated by reason of his death, and ignorant of her rights under the will, the defendant Mariano Barela came to her house, and, under pretext of obtaining documents and papers belonging to the testator, opened said iron box and said iron safe, and without her consent took therefrom and

carried away a large sum of money which belonged to her, the amount of which she could not state, but believed it amounted to the sum of $25,000; that the defendant Mariano Barela counted said money, and gave to complainant $500 of her money taken as aforesaid, and presented each of three servant girls in the house with $10, and took and carried away the balance of said money, and also took and carried away the horses and buggy aforesaid; that, at the time of the occurrence last mentioned, she was totally ignorant of her rights under the will; that she is uneducated, and unable to read or write, easily deceived, and that she at that time reposed implicit confidence in the good faith and integrity of the defendant Mariano Barela, and therefore did not remonstrate against his said actions, but permitted him to take away the said horses and buggy and said money without giving a receipt for the same, and without her knowing the amount of money so taken; that, after she became informed of her rights under the will, she requested the defendant Mariano Barela to inform her of the amount of money so taken from her, and also requested him to pay and return the same to her, together with the two horses and buggy; that the said defendant refused to comply with her request, and sent his agents, Nestor Armijo, Jacinto Armijo, and Pedro Lassaigne, the parish priest and spiritual adviser of complainant, to dissuade and discourage her from asserting and demanding her rights in the premises, and to represent to her that she was not entitled to the money or to anything else which the said Mariano Barela had taken away from said house and lot, and to represent to her that the title to said house and lot was defective, and that, unless she would accept the two horses and buggy, and a deed which the said Mariano Barela represented to her conveyed to her all the lands formerly known as the "Juan Bautista Armijo and Manuel Lopez properties," and said house

and lot, in full satisfaction of all demands against him as such executor, he would cause the title to said house and lot to be investigated, and the complainant to lose, and be turned out of said house; that she, being deceived by the false and fraudulent representations of Barela, and being intimidated and coerced by his threats and menaces, and being ignorant of her rights, agreed to accept said proposition and accede to said demand, and thereupon the said Mariano Barela executed and delivered to her a deed which he represented conveyed to her all the lands known as the "Juan Bautista Armijo and Manuel Lopez properties," and also the house and lot in Las Cruces, and returned to her the said two horses and buggy which he had wrongfully taken away, and thereupon she executed and delivered to the said Mariano Barela the receipt which he demanded of her; that said release and receipt so executed and delivered by her was wholly without consideration, and gave to her only a part of what she was entitled to under the will, and is a fraud upon her rights, and would, if permitted to remain in force and effect, deprive her of property of great value, viz., the value of $25,000, without any recompense or consideration. The bill also avers that said Mariano Barela and Rafaela Barela are the residuary legatees under the will, and as such claim the money and property wrongfully taken from complainant by the said Mariano Barela, executor, etc., and that on the twenty-fourth day of October, 1887, while complainant had pending in the district court a bill of complaint against Mariano Barela, executor, and Rafaela Barela, which bill, among other things, prayed for the cancellation of the said receipt and release, the said Mariano Barela, in order to make a final statement of his accounts as executor, went before the defendant Demetrio Chavez, probate judge, and proffered and used said false and

fraudulent receipt and release for the purpose of obtaining a final release and discharge from his liabilities as such executor, notwithstanding the fact that there never had been filed in the probate court any schedule showing the kind and value of the property and assets which had gone into the hands of the executor, and that the complainant had no notice of such settlement and discharge until some five or six days after the same had been made and granted.

The prayer of the bill is that the said codicils to the will, and the alleged and pretended discharge of the said Mariano Barela as executor, and the proceedings in reference to admitting said codicils to probate, and. in granting the discharge of the executor, be declared null and void, and for a full and perfect discovery of all sums of money, valuable papers, and property of every description and kind obtained by him, received, or taken from the house and lot, and everything contained therein, devised to complainant; that the will of the late Pedro Garcia y Perea, so far as the same relates to the rights of complainant, be construed, and her rights thereunder be enforced by a decree of the court; that said pretended receipt or release be surrendered and cancelled, and said transaction be declared null and void; and that an account, etc., be taken, under the direction of the court, of all the dealings and transactions between the defendant Mariano Barela and complainant, etc.

The defendant Mariano Barela, in his answer, admits the will, the probate thereof, and of the codicils, his own appointment as executor, and that the codicils were not properly executed, because signed by only two witnesses, but he says that at no time has there ever been any objection or contest made in the probate court as to those codicils, and that he derives no benefit from the codicils, and renounces all benefit therefrom, but whether they are valid or not in no manner

affects complainant's rights under the will; that no objection or exception has ever been made in the probate court to any proceedings therein relative to the estate; that complainant's receipt is only evidence of her having received her distributive share of the estate; and that he disclaims all title to the Armijo and Lopez properties devised to complainant by the will. The answers of the other defendants are unimportant on this appeal, and space will not be taken up in stating their contents. A general replication was filed to the answer of the defendant Mariano Barela by the complainant.

The special master in chancery, to whom the cause was referred, found in favor of the complainant upon all the material allegations of the bill; that the money found in the iron box and iron safe, and carried away by the defendant Mariano Barela, passed to the complainant, under the devise to her of the house and lot in Las Cruces, articles of goods, personal furniture, household furniture, and all that was therein contained; and that the amount of said money was $6,138; and the report of the master recommended a decree in favor of the complainant for that amount, less the $500 the defendant paid to her. The defendant filed exceptions to the master's report, which were, on the eighth day of October, 1888, considered by the court and overruled. The court then made a decree confirming the report of the master in all things except as to the time from which the amount found in favor of complainant should bear interest. The decree also held the first codicil to the will, and the action of the probate court in admitting the same to probate, null and void, and directed the executor to execute the will as construed by the master and confirmed by the court. It declared null and void the so-called final settlement made by the executor in the probate court, as to the complainant, and decreed that the complainant have

and recover of the defendant Mariano Barela as executor of the said estate, and of the said Mariano Barela, in person, the sum of $5,638, with interest from the date of the decree at the rate of six per cent per annum, and for costs, etc.

The first question presented for the consideration of the court is raised by the appellants' first and third assignments of error, viz., "that the court erred in not dismissing the bill for want of ' jurisdiction, and in overruling defendants' exception numbered eight, as to the jurisdiction of the court." . The appellant contends that section 562, Compiled ' Laws, 1884, conferred exclusive original jurisdiction upon the probate court of Dona Ana .county to hear and determine all questions relative to the probate of the will, and any controversy respecting the will, involved in the case, the conduct of the administration of the estate, and the settlement of the estate by the executor; that the appellee should have presented the questions arising in this case to the probate court, and, if unsuccessful there, could have then appealed to the district court; and that the district court did not possess original jurisdiction to hear the case, and could only acquire jurisdiction by appeal taken from the probate court. Section 562, Compiled Laws, 1884, is as follows: "The several probate judges shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments; the granting letters testamentary and of administration, and the repealing the same; the appointing and displacing guardians of orphans and persons of unsound mind; to binding out apprentices; to settlement and allowance of the accounts of executors, administrators and guardians; to hear and determine all controversies respecting wills, the right of executorship, administration, or guardianship, respecting the

*Marginal note:* WILL: bill to set aside executor's settlement: jurisdiction of supreme and district courts: power of legislature to pass act 1884, section 562, Comp. Laws.

duties or accounts of executors, administrators or guardians, and all controversies between masters and those bound to them; to hear and determine all suits and proceedings instituted against executors or administrators upon any demand against the estate of their testator or intestate; provided that, when any such demand shall exceed one hundred dollars, the claimant may sue either before the probate court or in the district court, in the first place." This section of the statutes is certainly broad in its provisions; and it may be, as contended by the appellant, that it was the intention of the legislature to vest in the probate courts "exclusive original jurisdiction in all cases relative to the probate of last wills and testaments;. * * * to hear and determine all controversies respecting wills; * * * to hear and determine all suits and proceedings instituted against executors or administrators upon any demand against the estate of their testator or intestate." But the appellee insists that, if the statute is susceptible of the construction claimed for it by the appellant, the legislature had no power to take from the district court a part of the jurisdiction conferred upon such courts by the organic act of New Mexico, and vest such power in the probate courts; and this question we will proceed to consider first. Section 1868 of the organic act provides: "The supreme court and the district courts, respectively, of every territory, shall possess .chancery as well as common law jurisdiction." The chancery and common law jurisdiction here conferred upon the district and supreme courts is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance, which can be litigated in a court of justice. It includes, and has always included, a very general jurisdiction over cases of administration, from the fact that common law courts and probate courts do not have powers adequate

to give relief. The jurisdiction is founded upon the principle that it is the duty of the court to enforce the execution of trusts, and the "necessity of taking accounts, and compelling a discovery," etc. 3 Williams, Ex'rs, 2117. The organic act provides that "the jurisdiction of the probate court shall be as limited by law." There can be no doubt that by the organic act a part of the judicial power of the territory was vested in the probate courts; but this power was limited to such subjects as have from an early day, both in this country and in England, pertained to these courts, such as the probating of wills, the appointment of executors and administrators, the allowance of claims against estates, the settlement of accounts of executors and administrators, the appointment of guardians, and the control of infants' estates, etc. Such courts are not, in their mode of proceeding, governed by the rules of the common law. They are without juries, and have no special system of pleading; and hence their powers are inadequate to the complete exercise of original and exclusive chancery jurisdiction. In Ferris v. Higley, 20 Wall. 375, the supreme court of the United States, we think, fairly and accurately interpreted the meaning of the phrase "as limited by law," as used in the organic act, with reference to the jurisdiction of the probate courts. In that case the legislature of Utah territory had passed an act as follows: "The several probate courts in their respective counties have power to exercise original jurisdiction, both civil and criminal, and as well in chancery as at common law, when not prohibited by legislative enactment; and they shall be governed in all respects by the same general rules and regulations as regards practice as the district courts." In construing this statute, that court said: "The argument is that the words 'shall be as limited by law' refer to laws to be thereafter made by the territorial legislature, and that,

as the power of that body extended to all rightful sub-
jects of legislation, it extended to this of totally chang-
ing the jurisdiction of these courts.    We are not pre-
pared to say that, in deciding what law is meant in
this phrase 'as limited by law,' we are wholly to exclude
laws made by the legislature of the territory.    There
may be cases when that legislature, conferring new
rights or new remedies, or establishing anomalous
rules of proceeding within their legislative powers,
may direct in what court they shall be had.    Nor are
we called on to deny that the functions and powers of
the probate courts may be more specifically defined by
territorial statutes within the limit of the general idea
of the nature of probate courts, or that certain duties
not strictly of that character may be imposed on them
by that legislation.    But we hold that the acts of the
legislature are not the only law to which we must look
for the powers of any of these territorial courts.    The
general history of our jurisprudence, and the organic
act itself, are also to be considered; and any act of the
territorial legislature inconsistent with the latter must be
held void.    We are of opinion that the one which we
have been considering is inconsistent with the general
scope and spirit of that act in defining the courts of
the territory, and in the distribution of judicial power
amongst them; inconsistent with the nature and pur-
pose of a probate court as authorized by that act; and
inconsistent with the clause which confers upon the
supreme court and district courts general jurisdiction
in chancery as well as at common law.''    It is true that
the Utah statute is much broader in its scope than our
own, but the difference is in degree only.    The princi-
ple involved is as to the power of the territorial legis-
lature to take from the district courts jurisdiction of
matters which have belonged to such courts from time
immemorial, and which is specially conferred by the
organic act, and to confer upon the probate courts

jurisdiction of matters far beyond that granted by the organic act, and which in the history of our jurisprudence, has never been considered as inherently belonging to such courts. We are of the opinion that section 562, Compiled Laws, 1884, so far as it attempts to invest the probate courts with exclusive original jurisdiction in controversies of the character of the case at bar, is void. The case presented by the bill and made out by the evidence involves a trust fraudulently executed, and necessitates a discovery and an accounting. The existence of these is all that is necessary to invoke the equitable jurisdiction of the court.

We now proceed to consider the main point involved in the case, viz., whether, under the fourth clause of the will, the money contained in the iron box and iron safe passed by the devise to complainant, or to the residuary legatees under the last clause. Some discussion has occurred as to whether the translation made of the will from the Spanish to English is correct; but the record discloses an admission of both sides that the copy of the will heretofore set out in this opinion is the sworn translation of the will made by Pinito Pino, and as such was introduced in evidence without objection. We therefore adopt that translation as the proper one.

BEQUEST of personal property; construction of will.

The fourth clause of the will reads: "I also grant to my wife, already referred to, all articles of goods in my house, personal furniture, household furniture, and all that therein exists." The house contained, among other things, an iron box and an iron safe; and in these were found the money which is the subject of this controversy. The will was evidently written by some person who was entirely ignorant of legal forms, and of all rules relative to the construction of wills, but, however lacking in legal precision of expression the will may be, the testator had some meaning in the language used to convey his wishes with respect to the

disposition of his property, and the meaning must be ascertained from the instrument itself.

The clause of the will under consideration contains a devise of certain particular things which are enumerated; and the appellant contends that the words "all that therein exists," which follow the enumeration of particular things, did not extend the devise, but limited it to the particular things enumerated. The rule invoked is a familiar one. But little assistance is derived from general rules in the construction of a will. The intent of the testator is to be sought in the instrument itself. In making it, he does not often have in mind any particular rules of construction applied to other wills. He uses those expressions which he supposes convey his own thoughts and wishes. In Given v. Hilton, 95 U. S. 598, it is held that in the construction of wills, as well as of statutes where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things ejusdem generis with the particular things mentioned. This is because it is presumed the testator had only things of that class in mind; but this rule of construction rests on a mere presumption, easily rebutted by anything that shows the larger subject was in fact in the testator's view. The language used in the fourth clause was certainly sufficient to make a good devise to complainant of all the things that were enumerated, without the use of the words "and all that therein exists." Why were these words added, unless the testator had in mind something besides the particular things mentioned? The second clause of the will devised to the wife the testator's residence, which is described. The fourth clause devised to her the articles of goods, personal furniture, household furniture in the house, "and all that therein exists." Exists where? Not in the house, but in the personal and

household furniture. We think there can be no doubt but the iron box and iron safe passed to the wife under the enumeration of "articles of goods, personal furniture and household furniture." But there was something more in the articles enumerated to be disposed of. Therefore the testator adds: "And all that therein exists." These words had a meaning to the testator, because he alone knew that the money was there. Taking the language used in the will in connection with the testator's esoteric knowledge of the existence of a large sum of money in the iron box and iron safe, we hardly see how a man ignorant of the rules of the construction of wills could have expressed his thoughts and intentions more clearly than the same were expressed in this will. The purpose of the testator was to dispose of all his property; and, if the contention of appellant be correct, the will gave to the wife the residence of the testator, and a piece of land near the depot in Las Cruces, known as the "Juan Bautista Armijo and Lopez" land, the household furniture in the residence, ten cows, one small wagon, and two mules. It made specific bequests to various other persons of one thousand, six hundred head of sheep, a house, cows, asses, money, etc., and the remainder of the property to the defendants, and although possessed of a large amount of money, the wife was left without a dollar, except as she might raise it by a sale of the property devised to her. The complainant was the wife of the testator. They had no children. There is nothing in the record to suggest that the testator did not entertain for his wife that complete affection that all good men should have for good wives. No reason existed to indicate that the testator had any cause to deprive his wife of that maintenance and support from his property to which she was entitled. It is held in Smith v. Bell, 6 Pet. 74, that "in the construction of ambiguous expressions the situation of the parties may

very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them.'' The residuary legatees were, respectively, the sister and nephew of the testator. But the testator was under no legal or moral obligation to make provision in his will for their support. Had he ignored them entirely, no one could question his right to do so. But to the wife he was bound by legal and moral ties that could not be disregarded. We must presume that the testator had in his mind these obligations when he made his will, and that his intentions in respect thereto were in accordance with the dictates of humanity and morality. From these considerations, we think it was the intention of the testator to leave the money to the complainant, and that such intention is clearly expressed in the will.

The court below set aside the receipt executed by complainant to the defendant Mariano Barela of all claims against the estate of her deceased husband, and this is assigned by the appellant as error. It appears FINAL settlement of from the record that, a few days after the executor: fraud. death of Pedro Garcia y Perea, the defendant, Mariano Barela, in company with one Nestor Armijo and others, went to the residence of the deceased, and opened and read the will, and obtained from the wife the combination of the safe and the key to the iron box, and took therefrom money which was then and there counted, and which amounted to $6,138. The defendant gave to the complainant the sum of $500, and other small sums to household servants, and carried the remainder away with him. At the same

time he took away a carriage and two horses, which were found in a corral on the same premises. The wife at the time made no objection. She was advised at the time by Nestor Armijo that, in his opinion, the money belonged to the defendant Barela. Afterward a controversy arose on account of the executor having taken away the horses and carriage, and the deeds to the property devised to the wife. Up to this time there seems to have been no dispute as to the ownership of the money. The complainant is an ignorant woman, and seems to have accepted implicitly the statements of others that the money belonged to defendant. Nestor Armijo, who had so advised her, had been requested by her husband, before his death, in her presence, to look after her interests after his death; and therefore his advice, naturally, had great weight with her. Armijo and one Pedro Lassaigne, parish priest and spiritual adviser of complainant, undertook to settle the dispute. They went to the house of complainant, and persuaded her to give the defendant a receipt in full of all claims against the estate in consideration of his returning the horses and carriage and the deeds to her property. The complainant at first refused to give a receipt in full, but Armijo insisted on having a receipt to cover all her demands against the estate. During the conversation, Armijo told the complainant that defendant had written a letter to certain relatives of the deceased to come on and contest complainant's right to the property. In this way they preyed upon her fears, and prevailed upon her to settle with defendant, in order that she might get a perfect title to the property that had been left to her; the defendant promising, at his own expense, to defend any suits that might be brought against her. Under these circumstances, complainant signed and delivered to the defendant a receipt in the following words:

"TERRITORY OF NEW MEXICO, ⎫
                          ⎬ ss.
    County of Dona Ana.   ⎭

    "Guadalupe Sisneros Garcia, widow of the late Pedro Garcia y Perea, late of the said above county and territory, hereby receipts in full of all claims against said estate of said Pedro Garcia y Perea, in consideration of two horses and one buggy, and in full of all moneys, notes, debts, credits, choses in action, and all claims whatsoever due said estate, and does hereby relinquish all claims against said estate, and does hereby release Mariano Barela, executor of the last will and testament of the said late Pedro Garcia y Perea, from all claims of the undersigned widow of the said Pedro Garcia y Perea, deceased.

                        "GUADALUPE S. Y GARCIA,
                        "NESTOR ARMIJO,
                        "PEDRO LASSAIGNE."

    We think the court did not err in sustaining the master's finding that the receipt given by complainant was obtained by improper influences, by working upon her fears, and imposing upon her confidence and ignorance, and that the procuring of it was a fraud upon her. It does not matter whether the motives of the priest and Nestor Armijo in persuading complainant to execute the receipt were honest or sinister,—whether they acted as the agents of defendant or as the mutual friends of both parties. They held such relations to her as to give them the utmost influence over her conduct. She was ignorant of her rights, and they took no pains to inform her. Professedly her friends, they, whether purposely or not, insinuated in her mind the belief that only by acting on their advice could she preserve the property which she understood had been left to her by the will. At this time no thought of the money found in the safe was in her mind; but evidently the defendant's purpose, by obtaining the receipt, was

to estop her thereafter setting up any claim to the money. Wheeler v. Smith, 9 How. 82. The law imposes upon an executor the utmost good faith in the discharge of his duties to the estate and to the legatees. He will not be permitted to derive a benefit from the administration of such trust.

The order of the court below setting aside the final settlement made by the executor in the probate court, we think, was entirely proper. At the time the settlement was made the executor had in his hands a large amount of money that belonged to complainant under the will. He took no account of this money in his inventory of the property belonging to the estate. He accounted for it in no manner whatever. And a final settlement of his accounts as executor, under such circumstances, was a fraud upon the rights of the complainant, and was very properly held to be null and void.

The appellant contends that there was error in sustaining the finding of the master that the testimony showed that the testator in the fourth clause of the will, intended to give to his wife the money in question. The record shows that parol testimony to prove the intentions of the testator with respect to the money was first offered by the appellant, and was permitted to be given over the objection of the appellee, not because the master regarded the evidence as competent, but, as he says in his report, "he could find no rule of law authorizing a master to exclude testimony of any kind, which counsel might deem proper to offer." The report shows, further, that the master did not consider the parol evidence competent, and did not consider it in making up his findings.

The master says in his report: "I am of the opinion that there is no ambiguity in the language of the fourth clause of the will such as will relax the rule, and admit the parol testimony to ascertain testator's inten-

tion." This conclusion of the master was sustained by the court below, and we can see no error in that ruling. On the contrary, we think the court below declared a correct principle of law upon the subject, and applicable to this cause.

The second codicil of the will was attested by but two witnesses.   Section 1380, Compiled Laws, New ATTESTATION of Mexico, requires that a will shall be attested codicil. by three or more witnesses.   To constitute a valid attestation of the codicil would require no less number.   Jar. Wills, sec. 93.

The court below committed no error in setting aside the action of the probate court approving said codicil.

A number of errors have been assigned by the appellants besides those already noticed, but they all depend more or less upon the questions already noticed in this opinion. We do not think it necessary to enter into a discussion of them. The case was properly decided below upon the merits. We see no substantial errors in the record, and the judgment will be affirmed.

LONG, C. J., and LEE, J., concur.