[No. 2989.   Dec. 21, 1925.]

Ex parte MAGEE.

[242 Pac. 332.]

### SYLLABUS BY THE COURT

The Governor, under the provisions of section 6 of article 5 of the Constitution, has power to pardon for direct contempt of a court.

Original proceeding by Carl C. Magee for writ of habeas corpus. Petitioner discharged.

Hanna & Wilson, of Albuquerque, and Wilson & Perry, of Santa Fé, for petitioner.

O. O. Askren, of East Las Vegas, and C. J. Roberts, of Santa Fe, for respondent.

### OPINION OF THE COURT

PARKER, C. J.   This is an original proceeding in

--------

[1] 13CJ p. 97 n. 9

this court in habeas corpus. The petitioner was sentenced for a direct contempt of the district court. The Governor issued to him a pardon. The sheriff of the county refused to recognize the pardon on the ground that it was beyond the executive power. Petitioner thereupon brought this proceeding.

The sole question presented is whether the Governor has power to pardon for a direct contempt of court. The pardoning power is conferred by section 6 of article 5 of the Constitution, which is as follows:

"Subject to such regulations as may be prescribed by law, the Governor shall have power to grant reprieves and pardons, after conviction for all offenses except treason and in cases of impeachment."

In State v. Magee Pub. Co., 29 N. M. 455, 224 P. 1028, 38 A. L. R. 142, this court considered this provision and held that it granted power to the Governor to pardon for constructive criminal contempt. That case differs from the present case in one particular only: In that case the contempt was indirect and constructive, being effectuated by means of articles published in a newspaper. In this case the contempt was direct and in the presence of the court, and was effectuated by words addressed directly to the judge. It is said in the briefs that no case is to be found in the books wherein it has been decided that a direct contempt may be pardoned. From this fact it is sought to be argued that the power does not exist in such cases. We deem the argument faulty. In the first place, that no such case is to be found may be accounted for by the fact that no such circumstances have heretofore existed, either in the mental attitude of the Governor or the judge concerned in such a transaction. Again, it has been thought by high law officers of the government that the power does exist in cases of direct contempt. In 3 Op. Attys. Gen. 622, there is reported an opinion by the then Attorney General of the United States, Mr. Gilpin, upon a state of facts showing a direct contempt. One Dixon committed an affray with another person in the presence of the judges of the Circuit Court of the United States. The Attorney General says:

"If we adopt—as the Supreme Court of the United States has decided we should do—the principles established by the common law respecting the operation of a pardon, there can be no doubt it may embrace such a case. A pardon has been held to extend to a contempt committed in Westminster Hall, under circumstances not materially different from those which occurred in the case submitted to the President. I am therefore of the opinion that should the President consider the facts such as to justify the exercise of his constitutional 'power to grant reprieves and pardons for offenses against the United States,' there is nothing in the character of this offense which withdraws it from the general authority."

The English case, to which the Attorney General refers, has not been called to our attention, but we do not deem it necessary to find and cite the same.

An examination of the two classes of contempt will show that there is no essential difference between the two. In constructive criminal contempt the means employed are indirect, but they result in a defiance of the dignity and authority of the court. In direct contempt, while the offense is more aggravated in the sense that it is open and in the face of the court, and tends to disturb and disrupt the orderly conduct of the business of the court, it amounts, just as in the case of constructive contempt, simply in the defiance of the dignity and authority of the court. The essential nature of the offense is the same in each case, although one may be more aggravated than the other.

It is sometimes said that, if the Governor may pardon an offense of this kind, the independence of the judiciary as a co-ordinate branch of the government may be destroyed; that a Governor may, from personal or political bias or hatred, or from a mistaken sense of duty, absolutely destroy the power and usefulness of any given court in the state. The answer to this suggestion is manifold. In the first place, no assumption can be indulged that a Governor will ever so far violate his oath, and so far depart from his duty, as to be guilty of such conduct. In the next place, if such calamity should ever befall the state, the remedy is by impeachment if the conduct should be flagrant, or by retirement by the vote of the people at the next elec-

tion. Again the proposition that the three departments of the state government are independent of each other is only relatively, and not absolutely true. For example, we are engaged in this very inquiry in an examination into the power and action of the Governor in granting this pardon. Should we conclude his action was without power, his whole proceeding would be undone. We may likewise pass upon the validity of the acts of the Legislature and undo its work, if it be beyond legislative power. The Legislature may impeach and remove from office both executive and judicial state officers. The Governor may veto acts of the Legislature and defeat legislation, unless it be passed by certain required majorities. All these things are familiar to all lawyers, and they show, as has been often said, that the co-ordinate branches of the government are not independent, but that there has been wisely introduced into American governments a system of checks and balances whereby justice is secured to the people, and public affairs are wisely administered.

It may also be said that while the power to punish for contempt is inherent in the courts, and its exercise is the exercise of the highest form of judicial power, it nevertheless is true that it is a one-man power, exercised without the aid and advice of a jury. Judges are human, the same as Governors and legislators. The power to punish for contempt in cases like the present is exercised under the stress and sting of insult, and human nature may not always be able to withstand such stress without losing the poise and calm judgment so necessary to the proper exercise of judicial power. It may be wise, then, to have a check upon such arbitrary power in the form of pardons by the executive.

The whole subject has been recently overhauled by the Supreme Court of the United States in Ex parte Grossman, 267 U. S. 87, 45 S. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131. That was a case of constructive contempt in violating an injunction against the sale of liquor on certain premises in the city of Chicago. It was a crim-

inal contempt. The argument made in that case is summarized by Chief Justice Taft as follows:

"The argument for the defendant is that the President's power extends only to offenses against the United States and a contempt of court is not such an offense; that offenses against the United States are not common-law offenses, but can only be created by legislative act; that the President's pardoning power is more limited than that of the King of England at common law, which was a broad prerogative and included contempts against his courts chiefly because the judges thereof were his agents and acted in his name; that the context of the Constitution shows that the word 'offenses' is used in that instrument only to include crimes and misdemeanors triable by jury, and not contempts of the dignity and authority of the federal courts; and that to construe the pardon clause to include contempts of court would be to violate the fundamental principle of the Constitution in the division of powers between the legislative, executive, and judicial branches, and to take from the federal courts their independence and the essential means of protecting their dignity and authority."

The court takes up these propositions seriatim and decides all of them in the negative. It holds that contempts are offenses within the meaning of the constitutional grant of the pardon power; that the power of pardon is the same as that exercised by the King of England prior to the separation of the colonies; and that contempt fell within the pardon power in England. The court traces the history of the opinions of the Attorneys General in regard to the question and shows that they have uniformly held that criminal contempts are within the pardoning power of the President. The court then discusses the argument that to hold that the President may pardon for contempt would tend to destroy the independence of the judiciary and violate the principle of the separation of the legislative, executive, and judicial powers. The court points out many cases in which the three departments overlap each other, and demonstrates that they are not absolutely independent, but only relatively so: Judge Taft also comments favorably upon the existence of the power to extend executive clemency. He says:

"It is a check intrusted to the executive for special cases. To exercise it to the extent of destroying the deterrent effect of judicial punishment would be to pervert it; but whoever

is to make it useful must have full discretion to exercise it. Our Constitution confers this discretion on the highest officer in the nation in confidence that he will not abuse it. An abuse in pardoning contempts would certainly embarrass the courts, but it is questionable how much more it would lessen their effectiveness than a wholesale pardon of other offenses. If we could conjure up in our minds a President willing to paralyze courts by pardoning all criminal contempts, why not a President ordering a general jail delivery. * * * If it be said that the President, by successive pardons of constantly recurring contempts in particular litigation, might deprive a court of power to enforce its orders in a recalcitrant neighborhood, it is enough to observe that such a course is so improbable as to furnish but little basis for argument. Exceptional cases like this, if to be imagined at all, would suggest a resort to impeachment rather than to a narrow and strained constrUdtion of the general powers of the President."

The court goes on to point out that the power of punishing for a criminal contempt is one which is exercised without the restraining influence of a jury and without many of the guaranties which the Bill of Rights offers to protect the individual against unjust conviction. It is said further:

"Is it unreasonable to provide for the possibility that the personal element may sometimes enter into a summary judgment pronounced by a judge who thinks his authority is flouted or denied? May it not be fairly said that in order to avoid possible mistake, undue prejudice, or needless severity, the chance of pardon should exist at least as much in favor of a person convicted by a judge without a jury as in favor of one convicted in a jury trial?"

'. The argument of the court seems to be conclusive and unanswerable. It is to the effect that criminal centempt is an offense within constitutional provisions like ours, and the pardoning power extends thereto as it has from early times in the English law. It is a wise provision and a reasonable check upon the exercise of a one-man power without the aid and advice of a jury, and which often must be exercised under the stress and sting of personal insult, sometimes depriving the judge of the ability to act wisely and judicially in such matters. The remedy for the abuse of the power of. pardon is in impeachment or defeat at the polls, but, so long as the executive has the power, he must have the right to exercise it untrammeled by any narrow construction of the constitutional grant. We feel fully

satisfied that our Governor, of this state has, under the pardon clause of the Constitution, full power to pardon for criminal contempt, either constructive or direct.

It follows from all of the foregoing that the petitioner is entitled to be discharged, and it is so ordered.

BICKLEY and WATSON, JJ., concur.