315 P.2d 223

STATE of New Mexico, on the relation of
John H. BLISS, State Engineer,
Plaintiff-Appellee,

v.

A. J. GREENWOOD, Defendant-Appellant.

No. 6211.

Supreme Court of New Mexico.

Aug. 26, 1957.

Neal, Neumann & Neal, Carlsbad, for appellant.

Fred M. Standley, Atty. Gen., Santa Fe, Charles D. Harris, Sp. Asst. Atty. Gen., Roswell, for appellee.

COMPTON, Justice.

This appeal arises out of the judgment and sentence of appellant for contempt of court.

In 1951 the appellant was permanently enjoined from using water from two wells on his property which had been drilled without a permit from the state engineer. Thereafter, on motion of a special assistant attorney general, appellant was cited to show cause why he should not be held in contempt for violating the 1951 order. At the hearing, appellant's demand for a jury trial on the issue of his guilt was denied.

The trial court found that during 1956 appellant irrigated his farm from the wells in question without a valid water right and without a permit, all in violation of the 1951 court order. Accordingly, the appellant was found guilty of contempt of court and was sentenced to pay a fine in the amount of $750. In addition the appellant was given a six month jail sentence which was suspended until further order of the court.

Appellant's motion to modify the judgment and sentence to a maximum fine of $50 was denied.

Appellant relies upon two points for reversal, the first, that the evidence was insufficient to sustain a judgment for contempt, and second, the denial of a trial by jury.

■ It should first be pointed out that the merits of an injunction are not open to question in a contempt proceeding originating subsequent to final judgment. If a court has jurisdiction when it issues an injunction, then such order must be obeyed as long as it is in force. Rhodes v. State ex rel. Bliss, 58 N.M. 579, 273 P.2d 852; Canavan v. Canavan, 17 N.M. 503, 131 P. 493; Goetz v. Goetz, 181 Kan. 128, 309 P.2d 655.

■ Contempts procedurally are either civil or criminal in nature. This court has recognized that the line of demarcation between the two is somewhat hazy. Costilla Land & Investment Co. v. Allen, 15 N.M. 528, 110 P. 847. Nevertheless, it is frequently necessary that the line be drawn. The fact that the state is a party to a contempt proceeding is not the conclusive factor in determining whether it is a criminal or civil proceeding. Rhodes v. State ex rel. Bliss, supra. The major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised. State v. Magee Publishing Co., 29 N.M. 455, 224 P. 1028, 38 A.L.R.

142. Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal. Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil. The polar concepts are "punitive" *versus* "remedial". Moskovitz, Contempt of Injunction, 43 Col.L.Rev. 780. The fact that the act with which a defendant is charged in a contempt proceeding is also indictable crime, as in this case, has also been relied on in holding a contempt criminal. Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162.

■ Tested by the above rules we agree with appellant that this proceeding was one for criminal contempt, and, therefore, was governed by rules of criminal law. State v. New Mexican Printing Co., 25 N.M. 102, 177 P. 751. It follows from this that proof of guilt had to be beyond a reasonable doubt. 12 Am.Jur., Contempt, § 75. However, the fact that the trial court felt the proceeding was one of civil contempt was clearly harmless error since the defendant was found guilty of contempt beyond a reasonable doubt. At the close of the case the court stated as follows:

> "The court will find that the defendant wilfully violated the order as heretofore entered upon the well in question but I find it not only beyond a reasonable doubt but beyond any doubt in my mind."

■ It is well settled that a guilty verdict supported by substantial evidence will not be disturbed on appeal. This is true even though this court might have reached a different conclusion under the evidence if it had been the trier of the facts. State v. Martin, 53 N.M. 413, 209 P.2d 525. This court has repeatedly stated that it will not review the testimony except to determine whether the conviction is supported by substantial evidence. State v. Alls, 55 N.M. 168, 228 P.2d 952. This principle is so well settled that a citation of additional authorities is unnecessary.

There is ample evidence that the appellant owned and was in control of the land in question. The court's 1951 order so recited. Witness Phinizy testified that the appellant told him he was going to farm the land in 1956. That appellant held himself out as the owner of the well is shown by the testimony of witnesses O'Neill and Montgomery. Both stated that appellant gave them permission to obtain drinking water from the well. There is also substantial evidence that the well was being used to irrigate appellant's farm in violation of the 1951 order. Witness Hoover testified that appellant obtained cotton allotments for 1954, 1955 and 1956, and that such allotments were not issued except for irrigated land. This same witness also testified that he had inspected appellant's farm and was satisfied that irrigated crops had been raised.

The witness Nelson testified that he inspected appellant's farm and that he traced out the water from the well to the cotton. A portion of the testimony went as follows:

"Q. Did you walk out to the place where the water was delivered? A. Yes, sir, and the water was being used to irrigate cotton.

"Q. Did you see any water coming from any other wells or from any other irrigation ditches for the irrigation of this cotton? A. No, sir, I saw none."

The witness Phinizy testified that appellant told him he was going to farm the land in 1956. It would have been extremely difficult, if not impossible, to dry farm cotton in the Roswell area in 1956. State's exhibits 1, 2, 3 and 4 show considerable water flowing from the well in question into an irrigation ditch. Exhibit 4 shows the water flowing into the field and the growing cotton.

■ After carefully reviewing the testimony we have no hesitancy in holding that the finding of guilt was supported by substantial evidence.

This brings us to the second point raised by appellant. Appellant contends that New Mexico District Court Judges cannot fine a person for contempt of court in an amount exceeding $50.00 without a jury trial. He relies on § 1039 of the 1897 Code, C.L.1865, Ch. 28, § 2, as the basis for this contention. This section provided:

"No judge of the district court shall fine any person for contempt or want of

respect for the court in any sum exceeding fifty dollars without a jury trial."

This statute was in effect when the New Mexico Constitution was adopted January 21, 1911. Section 12, Article II of the Constitution in so far as material here provides as follows:

"The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate  *   *   *"

■ Appellant takes the position that the attempted repeal of § 1039 in 1915 violated the above constitutional provision. The answer depends on the validity of § 1039. Clearly, the Constitution continues the right to jury trial in that class of cases in which it existed either at common law *or by statute* at the time of the adoption of the Constitution, 50 C.J.S. Juries § 10, and in that class of cases where the right to a trial by jury existed prior to the Constitution, it cannot be denied by the legislature. Brandon v. Webb, 23 Wash.2d 155, 160 P.2d 529; Cassel v. Gregori, 28 Cal.App.2d Supp. 769, 70 P.2d 721. And, as we view the matter, the phrase "as it has heretofore existed" refers to the right to jury trial as it existed in the Territory of New Mexico at the time immediately preceding the adoption of the Constitution. Guiterrez v. Gober, 43 N.M. 146, 87 P.2d 437; Young v. Vail, 29 N.M. 324, 222 P. 912, 34 A.L.R. 980; State v. Holloway, 19 N.M. 528, 146 P. 1066, L.R.A.1915F, 922.

■ Accordingly if Section 1039 was a valid enactment, it could not be repealed by the legislature after adoption of the Constitution. Thus the issue is narrowed to a determination whether Section 1039 was valid. We do not believe that it was. At the time of its enactment, the section was in conflict with the Organic Act establishing the Territory of New Mexico. 9 Statutes at Large 446, Ch. 49, adopted September 9, 1850. The Organic Act was the Constitution of the Territory of New Mexico and the legislature could not pass laws in conflict with it. Congress granted no authority by the Act for jury trials for contempt. Browning v. Browning, 3 N.M., Gild., 659, 9 P. 677; Perea v. Barela, 5 N.M. 458, 23 P. 766; Torrez v. Board of Commissioners, 10 N.M. 670, 65 P. 181.

■ In our opinion Section 1039 violated the separation of powers doctrine as contained in Sections 3, 5 and 10 of the Organic Act. This view is not contrary to the conclusion reached in In re Sloan, 5 N. M. 590, 25 P. 930. In that case this court did not pass upon the validity of Section 1039 of the 1897 Code. As this court has stated in the past, the power to punish for contempt is inherent in the courts and its exercise is the exercise of the highest form of judicial power. State v. Magee Publishing Co., supra.; In re Sloan, supra. The real basis of this power is to be found in the doctrine of separation of powers as pro-

162

vided for in the Organic Act and later in the New Mexico Constitution.

██ However, the power of the courts to punish for contempt is not absolute, exclusive and free of all legislative regulation. The separation of powers between the executive, legislature and judiciary was never intended to be complete. Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527. This court made this clear in the case of Ex parte Magee, 31 N.M. 276, 242 P. 332, 333, when it stated, "Again the proposition that the three departments of the state government are independent of each other is only relatively and not absolutely, true." Even the strictest inherent power advocates have conceded at least some authority of the legislature to set up restrictions upon the exercise of the contempt power. Hawkins v. State, 125 Ind. 570, 25 N.E. 818; State v. Morrill, 16 Ark. 384. But, while the legislature may provide rules of procedure which are reasonable regulations of the contempt power it may not, either by enacting procedural rules or by limiting the penalty unduly, substantially impair or destroy the implied power of the court to punish for contempt. As the court stated in Wyatt v. People, 17 Colo. 252, 28 P. 961, 964:

"* * * for, though the legislature cannot take away from the courts created by the Constitution the power to punish contempts, reasonable regula-

tions by that body touching the exercise of this power will be regarded as binding."

██ The practical standard is the reasonableness of the legislative regulation. The statutory regulation must preserve to the court sufficient power to protect itself from indignities and to enable it effectively to administer its judicial functions. The contempt power more than any other distinguishes the court from a mere board of arbitration. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

Statutes requiring jury trials only in cases of *indirect contempts* have frequently been held invalid as encroachments on the power of the judiciary. Carter v. Commonwealth, 96 Va. 791, 32 S.E. 780, 45 L.R.A. 310; Smith v. Speed, 11 Okl. 95, 66 P. 511, 55 L.R.A. 402; Walton Lunch Co. v. Kearney, 236 Mass. 310, 128 N.E. 429; McDougall v. Sheridan, 23 Idaho 191, 128 P. 954; Pacific Live Stock Co. v. Ellison Ranching Co., 46 Nev. 351, 213 P. 700; Fort v. Co-operative Farmers' Exchange, 81 Colo. 431, 256 P. 319. Notwithstanding the above authorities to the contrary, it might well be that legislation requiring a jury trial in *indirect criminal contempts* does not materially interfere with the power of the courts. Pennsylvania Anthracite Mining Co. v. Anthracite Miner's, 114 Pa. Super. 7, 174 A. 11. But it is not necessary

for us to decide that question as the statute in question was not limited to indirect contempts. It included all contempts of court.

■ Courts have practically always recognized that different procedures should be used in prosecuting contempts usually depending upon whether the contempt occurred in the actual presence of the court. Cooke v. United States, 267 U.S. 517, 45 S. Ct. 390, 69 L.Ed. 767. The necessity for summary procedure is far greater in the case of direct contempt than in the case of contempt outside the presence of the court. Summary measures may be the only effective means of defending the dignity of judicial tribunals and of insuring that they are able to accomplish the purpose of their existence. So there should be no feeling that courts may safely be trifled with and that no fine for direct contempt may be levied in excess of $50.00, without a trial by jury.

We conclude that Section 1039 of the 1897 Code was not within reasonable and proper regulatory limits. It applied equally to all contempt proceedings and thus was invalid as contradictory to the separation of powers doctrine embodied in the Organic Act of 1850.

The judgment is affirmed, and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and KIKER, JJ., concur.