273 P.2d 852

**RHODES   v.   STATE ex rel. BLISS.**

No. 5769.

Supreme Court of New Mexico.

Aug. 24, 1954.

Frazier, Cusack & Snead, Roswell, for appellant.

Charles D. Harris, Sp. Asst. Atty. Gen., for appellee.

SEYMOUR, Justice.

Appeal is taken from the following order adjudging appellant guilty of contempt:

"Now, Therefore, it is ordered, adjudged and decreed that the defendant, M. L. Rhodes, be, and he hereby is, found in contempt of this Court for violation of the court order heretofore entered on September 5, 1953; that the defendant, M. L. Rhodes, be, and hereby is, sentenced to serve ten days in the county jail and he is fined the sum of $250.00.

"It is further ordered, adjudged and decreed that the sentence above imposed be suspended and the fine remitted on the condition that the defendant, M. L. Rhodes, does not further violate the order of this Court and in the event that the said M. L. Rhodes does violate the order of this Court, then and in that event the suspended sentence and the remission of the fine shall be set aside."

The foregoing order was the culmination of the following facts and pleadings. The State of New Mexico on the relation of John H. Bliss, State Engineer, filed a complaint and motion through a special assistant attorney general, seeking an order restraining appellant and others from interfering with and harassing the state engineer and his employees and agents, including Frank E. Irby, watermaster of the Lower Pecos, and from preventing their entry upon the land of the appellant for the purpose of performing their official duties in the administration and enforcement of the water laws of New Mexico, and seeking a further order directing appellant to give right of ingress and egress upon his land for the same purpose. The com-

plaint and motion alleged, among other things, the right of the state engineer to enter upon the lands to determine the extent and description of all lands irrigated from surface or underground sources and for the purpose of making hydrographic surveys, and the denial and refusal to the state engineer and his agents of permission to go on said land. Further alleged was immediate and irreparable loss or damage in that a survey crew was then at location for the purpose of doing the work necessary to carry out the water program.

The complaint and motion were filed on the 26th day of August, 1953 and, on that day, based upon these pleadings verified by Frank Irby, the Pecos River watermaster, the court entered its order permitting entry as requested, temporarily restraining appellant from denying entry, and ordering appellant to show cause September 5, 1953 why the temporary restraining order should not be continued in full force and effect pending final hearing. Appellant filed his response to the court's preliminary order, attacking the same on the merits and further asking that the restraining order be discharged because the trial court did not require the giving of security upon its issuance, or in the alternative, did not recite in its order a good cause shown for not requiring such security, all as required by Rules 65 and 66(a) of the Rules of Civil Procedure, being § 19–101 (65, 66), N.M.

S.A.1941. After hearing on September 5, 1953, the district court continued the injunction in force in substantially the same terms as contained in the temporary restraining order. On the 18th day of September, 1953, appellant filed his answer to the complaint, including denials and affirmative defenses. On the same day, appellee moved the court for an order directing appellant to show cause, if any he had, why he should not be held in contempt for violation of the court's order of September 5, 1953, alleging in said motion the refusal on that day of the appellant to permit the watermaster and another, as agents of the state engineer, ingress and egress upon appellant's land for the purposes specified in the original complaint. A response to this order was filed by appellant and hearing in the contempt matter was held on the 9th day of November, 1953 and concluded with the court's order quoted first above.

Appellant relies upon two points, the first asserting that "The order of a temporary injunction is void," and the second asserting that "The order adjudging appellant guilty of contempt is void for lack of jurisdiction in the trial court, and for lack of evidence to sustain the order."

A substantial portion of appellant's brief is addressed to alleged error of the trial court as to issues on the merits in connection with the issuance of the preliminary injunction, such as alleged failure

to show irreparable damage, lack of authority of the state engineer to go upon lands, and similar matters. While these and other questions raised by appellant would be of primary concern in an appeal from a decision on the merits of the case, we believe that appellee is correct in saying that they are not of concern in the instant case, because the appeal before us is from the order adjudging appellant in contempt.

Appellee quotes High on Injunctions, 4th Ed., ch. XXIX, § 1416, p. 1426, as follows:

" * * * And upon proceedings for contempt in this class of cases the only legitimate inquiry is whether the court granting the injunction had jurisdiction of the parties and of the subject-matter, and whether it made the order which has been violated, and the court will not, in such proceedings, consider whether the order was erroneous. * * *"

That this statement of law is the law of New Mexico appears from the case of State v. Patten, 1937, 41 N.M. 395, 69 P. 2d 931. See also Jencks v. Goforth, 1953, 57 N.M. 627, 261 P.2d 655.

Therefore, our consideration of appellant's Point I will be confined to those matters which might be deemed to render the restraining orders of the court entirely void as distinguished from questions addressed to the propriety of the court's action in matters of which it had jurisdiction.

■ One assertion made by appellant in this regard is that the legislature never extended to the state engineer the right to seek an injunction or temporary restraining order and that, without such authority, the court's order would be entirely void. Under the case of State ex rel. Bliss v. Dority, 1950, 55 N.M. 12, 225 P.2d 1007, we must deny this contention.

■ The most important jurisdictional point raised by appellant has to do with the failure of the trial court to require security or recite its reasons for not doing so as provided by Rules 65 and 66 of the Rules of Civil Procedure.

Both litigants recognize that there is a division of authority on this point and both sides would probably concede that the trial court's failure to require security would render its temporary restraining order utterly void if the requiring of security is mandatory. The division of authority referred to above is expressed as follows in the article on Injunctions, 43 C.J.S., § 166c, p. 785, entitled, "Parties from Whom Required." It reads in part as follows:

"*States*. While in some jurisdictions statutes requiring the giving of a bond as a condition to the allowance of an injunction are held to apply to the state as well as to other suitors,

the contrary view is more commonly held, under or apart from statutes providing that the state is not required to furnish a bond in any proceeding, although it has been held that it is within the power of the chancellor to require a bond, notwithstanding plaintiff in the action is the state. * * *"

The question expressed in the quotation and presented here has not been decided in this jurisdiction.

There is an annotation on this point at 83 A.L.R. 205. This annotation is more interesting than it is helpful, since the statutes under which the cited decisions were rendered vary substantially in their wording. The case of Alpha Petroleum Co. v. Railroad Commission, Tex.Civ.App., 1933, 59 S.W.2d 374, although not directly in point, sustains the position of appellee to the effect that our Rules 65 and 66 do not require the state to furnish security for a temporary injunction when the state is moving in an action to protect its own interests. The most interesting part of the Texas case is the fact that the original injunction statute in Texas provided that no bond should be required if the state was the complainant. The statute was revised in 1925 omitting this sentence exempting the state. The court, on rehearing, held that whatever may have been the purpose of the legislature in omitting the provision expressly exempting the state from giving bond in injunction cases generally, nevertheless, the state was not included in that requirement. Also in support of appellee's position is the case of City of Clay Center v. Williamson, 1909, 79 Kan. 485, 100 P. 59.

The question is of sufficient importance so that it should not be finally determined here unless such determination is necessary to a disposition of the instant case. We do not believe it to be necessary for the following reason: We have found no statute similar to our Rules 65 and 66. If there is a duplicate in the statutes of other states, our attention has not been called to it. The most distinctive clause in our Rule is as follows: "Provided, however, that for good cause shown and to be recited in the order made, the court or judge may waive the furnishing of security."

The contention of appellant is that the failure to require security, together with the failure of the court to recite its reason therefor, results in the trial court's order being void. As we view the matter, if the trial court had simply stated in its order that the requirement of security would be waived by reason of the fact that the state was the real party interested in procuring this order, we would have no hesitation in saying that the trial court properly exercised its discretion and had jurisdiction to issue the temporary restraining order. The pleadings on their face disclose this very

fact. It seems an extraordinarily technical holding to say that the trial court was without jurisdiction because its order did not state something which is apparent to to anyone reading these pleadings. We decline to do so.

Further, the giving of security under Rules 65 and 66 is not mandatory, but to a large extent left to the discretion of the court; and although the issuance of a temporary restraining order without requiring security, absent a stated reason or for an improper stated reason, might well be error subject to reversal on appeal, we do not believe that such failure to require security renders the order of the court without jurisdiction.

It is our conclusion that at most the failure of the trial court in this case to recite its reason for failing to require security is error; therefore, the order of the court is not void as contended by appellant, and in this regard, we must rule against him.

■ Appellant's Point II attacks the actual order from which this appeal is taken, that is, the order adjudging appellant in contempt. It is true that the contempt order would·be void and the court without jurisdiction to render it, if the order temporarily enjoining the appellant were void. Since we have already determined that the original injunction orders were not void

for want of jurisdiction, as distinguished from appellant's additional assertions of error, appellant's contention in this regard must fail.

■ The final contention seems to be that the contempt order itself, separate and distinguished from the restraining orders, is void. From this point on, we have difficulty in determining the exact grounds upon which appellant relies for reversal. Referring to the record and appellant's response to the order to show cause, we find a denial of the facts alleged by appellee as a violation of the restraining order. In this regard, at the contempt hearing, two witnesses furnished by appellee, the state, were heard; the state then rested its case and appellant put on no witnesses, in spite of the fact that the witnesses for the state testified to a direct violation by appellant of the court's order. At that point in the proceedings, appellant moved that he be discharged on the ground that the state had failed to produce evidence showing such violation of the court's order; the motion was overruled and appellant excepted. This motion seems to have been addressed exclusively to the adequacy of the evidence on the issue of a violation. In our judgment the court properly over-ruled it, and we believe that appellant has preserved for review here, exclusive of jurisdictional questions, only the issue raised by his motion.

Certainly appellant does not have available to him here certain defenses contained in his response to the order to show cause, namely, the scope of the duties of the state engineer under our water laws, the agency relationship between the state engineer and the Pecos watermaster, and other defensive allegations pleaded to the original cause of action.

■ Disregarding for the moment whether or not appellant has saved for review the balance of his contentions, it becomes necessary to determine just what they are. Appellant argues that the contempt proceedings were criminal. He bases this in part upon the fact that the action was instituted by the special assistant attorney general on behalf of the state, and, in part, upon his assertion that the proceedings were primarily for the purpose of punishing appellant rather than for the purpose of coercing him, the latter being the purpose of a civil contempt order. Just where these contentions lead, it is difficult to determine. With regard to the grounds upon which appellant asserts that this contempt action was criminal, he is wrong. The fact that the state is a party to a contempt action is not a conclusive factor in determining whether it is a criminal or civil proceeding; this appears clearly in the language of the United States Supreme Court in United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677,

91 L.Ed. 884. Further, that this fact is not conclusive of the question is obvious because such a ruling would not allow the state to participate in a civil suit and have available to it the court's power to enforce orders by use of the machinery of civil contempt; certainly the state has the same rights, remedies and protections that are available to private litigants in the civil courts of this country.

■ Appellant's contention that the contempt order in this case is necessarily punitive rather than coercive seems to rest chiefly upon the strength of his conviction that the state is here abusing and overriding the property and personal rights of an individual for what he seems to believe is an inconsequential reason. This is not the test. From the record before us, it appears that the watermaster, acting for and on behalf of the state engineer, was performing a customary task in making the final check of a hydrographic survey. In doing this, he was stopped by appellant in violation of the order of the court. Nothing in the record indicates that the work was then completed or has yet been completed. On the contrary, the wording of the contempt order, namely:

"* * * that the sentence above imposed be suspended and the fine remitted on the condition that the defendant, M. L. Rhodes, does not further violate the order of this Court

and in the event that the said M. L. Rhodes does violate the order of this Court, then and in that event the suspended sentence and the remission of the fine shall be set aside."

indicates to one reading the order that the purpose of the order was to enable appellee to complete its work on the hydrographic survey without further interference from appellant. If this was the primary purpose of the contempt order, it was coercive, and in the litigation heretofore cited, Jencks v. Goforth, supra, involving the New Jersey Zinc Company, we have already held that a suspended sentence of imprisonment can be a proper punishment for contempt in a civil contempt proceeding.

Therefore, it is our conclusion that the grounds for appellant's assertion that this is a criminal contempt proceeding have no merit. We are left, however, with the bald assertion that it was in fact a criminal action. Appellee, on the other side of the question, takes the position that this Court has already determined, by its decision in the case of Jencks v. Goforth, supra, that the contempt proceeding in the instant case is civil. Appellee's contention in this regard is incorrect because, in the Jencks case and in the other decisions of this Court relating to the same controversy, the parties admitted from the start that the contempt proceeding was civil and the question posed in the instant case as to the character of the proceedings was not presented. New Jersey Zinc Co. v. Local 890 of International Union, etc., 1953, 57 N.M. 617, 261 P.2d 648; New Jersey Zinc Co. v. Local 890 of International Union, etc., 1953, 57 N.M. 626, 261 P.2d 654; Jencks v. Goforth, supra, and Local 890 of International Union, etc., v. New Jersey Zinc Co., 1953, 57 N.M. 627, 261 P.2d 654.

In resolving these questions of contempt, it would be of material aid to have the attorneys, by their pleadings and by proper motion, or exceptions to the rulings of the court, narrow the issues presented to the exact character of the contempt hearing involved in a particular case. Under the United Mine case, we believe it feasible and proper to have issues presented and tried in the same suit on both civil contempt and criminal contempt; however, fairness and justice to the parties concerned would be more easily achieved in reviewing these matters if the exact nature of the proceedings and the exact purpose of the penalty imposed were made clear.

From the United Mine Workers case, supra, appellant has quoted a portion of the opinion, which to our minds, sustains the position taken by this Court that, in the instant case the action of the trial court must be affirmed. The quotation is as follows:

"The question is whether the proceedings will support judgments for

both criminal and civil contempt;
* * *.

\* \* \* \* \* \*

" * * * Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures. Disposing of both aspects of the contempt in a single proceeding would seem at least a convenient practice. * * * Rule 42(b), while demanding fair notice and recognition of the criminal aspects of the case, contains nothing precluding a simultaneous disposition of the remedial aspects of the contempt tried. Even if it be the better practice to try criminal contempt alone and so avoid obscuring the defendant's privileges in any manner, a mingling of civil and criminal contempt proceedings must nevertheless be shown to result in substantial prejudice before a reversal will be required. That the contempt proceeding carried the number and name of the equity suit does not alter this conclusion, especially where, as here, the United States would have been the complaining party in whatever suit the contempt was tried. In so far as the criminal nature of the double proceeding dominates and in so far as the defendants' rights in the criminal trial are not diluted by the mixing of civil with criminal contempt, to that extent is prejudice avoided. * * *" [330 U.S. 258, 67 S.Ct. 697]

We find no substantial prejudice to the rights of appellant in the order entered by the trial court holding him in contempt. Appellant did not deny the facts of which complaint was made. While we are of the opinion that this proceedings was primarily a civil contempt proceedings, there is no argument of substance made by appellant which would render the order improper if we deemed it a criminal proceeding. Be that as it may, we find no error which would justify this court in reversing the action of the trial court.

The judgment of the trial court is affirmed.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON and LUJAN, JJ., concur.