245 P.2d 156

NEW JERSEY ZINC CO. v. LOCAL 890 OF INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS, et al.

No. 5467.

Supreme Court of New Mexico.

June 12, 1952.

Rehearing Denied June 28, 1952.

Edison C. Serna, Silver City, Nathan Witt, New York City, for appellants.

Woodbury, Shantz & Woodbury, Silver City, Garland & Sanders, Las Cruces, for appellee.

COORS, Justice.

This is an appeal from a decree of the District Court of Grant County adjudging the defendants in contempt of court for violating a temporary restraining order issued by the court on June 12, 1951. This civil contempt proceeding arose out of an injunction suit filed in the District Court by plaintiff (appellee) against the defendants (appellants) wherein the plaintiff prayed in its complaint for a permanent injunction and also a temporary restraining order enjoining and restraining defendants and each of them from trespassing upon plaintiff's property and blocking the roads and other entrances to property of plaintiff in such manner as to restrain or coerce the employees of plaintiff from returning to work, or from illegally attempting to keep said employees from continuing in their employment. On June 12, upon evidence presented to and considered by the court, an interlocutory order in the nature of a temporary restraining order was issued, the material parts of which, so far as this appeal is concerned, read as follows:

"It is, therefore, by the Court Considered, Ordered and Adjudged that defendants and each of them be, and they are hereby enjoined and restrained, until the further order of this Court, from trespassing upon said plaintiff's property and blocking the roads and other entrances to the property of plaintiff in such manner as to restrain or coerce the employees of plaintiff from returning to work."

The injunction suit came on regularly for final hearing before the court on June 21 and this hearing continued to and through June 26. The defendants at said hearing were represented by their attorneys. On June 30 the trial judge informally advised counsel for all parties by letter, which letter was filed as a part of the record in the case, of his decision and conclusions reached which he intended to carry into the judgment in the nature of a permanent injunction. At said time the trial judge advised that he would make permanent on or before July 9 the temporary restraining order theretofore issued. On July 9 the court entered and filed its findings of fact and conclusions of law on the hearing for the permanent injunction. These are quite lengthy and unnecessary to relate here except to state that Conclusion No. 4 by the court so filed read as follows:

"That the temporary restraining order should be made permanent."

On the same day, July 9, the district judge issued and filed his final decree in the nature of a permanent injunction, which contained the following provisions which are material in the present appeal:

"And the Court having heretofore made its Findings of Fact and Conclusions of Law:

"It is, therefore, by the Court, ordered, adjudged and decreed:

"1. That defendants and each of them, and their wives, mothers, sisters and children as their agents, be and they are hereby permanently enjoined and restrained from trespassing upon plaintiff's property and blocking the roads and other entrances to the property of plaintiff in such manner as to restrain, coerce or prevent the employees of plaintiff from returning to work, or from illegally attempting to keep said employees from continuing in their employment with plaintiff.

\*      \*      \*      \*      \*      \*

"4. That the Court retain jurisdiction of this cause for such rulings or orders as may be necessary."

On July 11, two days after the court issued the permanent injunction and made the temporary restraining order permanent, the plaintiff by its attorneys filed in the cause a motion for an order to show cause why the defendants, International Union of Mine, Mill and Smelter Workers, Local 890 of International Union of Mine, Mill and Smelter Workers, and six individual defendants, officers and agents of the union defendants, should not be held guilty of contempt. Such motion alleged various violations by the defendants of the said temporary restraining order of June 12 committed prior to the issuance of the permanent injunction and prayed that the court issue its order directing the defendant unions and the individual defendants specifically named to show cause "why they should not be held in contempt of said temporary restraining order of June 12, 1951". At the same time the plaintiff filed an affidavit of Clarence C. Snell reciting numerous facts with reference to acts of the defendants in support of its motion. On the same day the court issued an order to show cause as sought by said motion, the portion of which now relevant reads as follows:

"It is, therefore, by the Court, ordered:

"1. That defendants International Union of Mine, Mill and Smelter Workers, Local 890 of International Union of Mine, Mill and Smelter Workers, Clinton E. Jencks, Cipriano Montoya, Ernest Velasquez, Vicente Becerra, Pablo Montoya, and Fred Berreras shall, on the 20th day of

July, 1951, at the hour of 9:00 o'clock in the forenoon at Chambers of said Court in Silver City, Grant County, New Mexico, show cause, if any they have, why they should not be held in contempt for violation of said temporary restraining order."

The defendants named in plaintiff's motion to show cause why they should not be held guilty of contempt were legally served and the contempt proceeding came on for hearing before the court on July 21. Upon the opening of the hearing defendants' attorney asked the court for a ruling declaring whether the proceeding was one in civil contempt or criminal contempt. Plaintiff's attorney requested the court to rule that it was a proceeding in civil contempt, to which defendants' attorney agreed. The court announced that it was a civil contempt proceeding. The attorney for the defendants then orally moved the court to dismiss the order to show cause. The record shows the following with reference to such motion:

"Mr. Witt: Your honor, in view of the fact that you have ruled that this is a proceeding in civil contempt we now move to dismiss the Order to Show Cause issued by Your Honor and dated July 11th. This motion is based on the decision of the Supreme Court of the State of New Mexico in the case of Canavan v. Canavan, which

appears in 18 N.M. 640 and 139 P. 154 [51 L.R.A.,N.S., 972]. (cites law).

"The Court: I am going to overrule the motion.

\*      \*      \*      \*      \*      \*

"Mr. Witt: In view of the fact that Your Honor has denied our motion to dismiss the Order to Show Cause, the defendants will not participate any further in the proceedings and will rest their legal rights on Your Honors ruling denying the motion for which we have taken an exception."

The hearing on the contempt charges continued with the consideration of evidence offered by plaintiff, and was concluded on the same day. On July 23 the court filed its findings of fact and conclusions of law on the contempt proceeding. It found as a fact that the defendants had violated the temporary restraining order of June 12 and made findings showing specifically the acts done in violation of such temporary restraining order prior to the date of the permanent injunction, July 9, 1951. After making specific findings of violations of the temporary restraining order the court also found as follows:

"7. That all of the aforesaid violations of said temporary restraining order have continued subsequent to the 9th day of July, 1951, the date of the Court's permanent injunction herein,

and said defendants and each of them have violated the provisions of said permanent injunction by the acts hereinabove set forth."

The court also in its conclusions of law included the following:

"4. That the defendants specifically named in plaintiff's motion for order to show cause are guilty of civil contempt for violation of the temporary restraining order herein, and the permanent injunction of July 9, 1951."

On the same date, July 23, the court signed the decree, in which it ordered, adjudged and decreed that the defendants named:

"have violated the terms of the temporary restraining order of June 12, 1951; that therefore they should be and they are hereby held to be in contempt of this court for violating the terms of the temporary restraining order issued by the court on June 12, 1951."

It should be pointed out here that this final decree or judgment ignored that part of the findings or conclusions of law heretofore mentioned and quoted, wherein the court found or concluded that the defendants violated not only the temporary restraining order but also the permanent injunction. In its final decree the court adjudged the defendants guilty of violating the temporary restraining order of June 12 only and provided punishment of the defendants therefor. The decree does not in any way adjudge the defendants guilty of any contempt for violating the permanent injunction or prescribe any punishment therefor.

There are no issues of fact involved in this appeal but only two issues of law presented by the appellants as their Points A and B. Appellants' Point A reads as follows:

"The District Court had no power to hold defendants in contempt of the temporary restraining order after the permanent injunction had been issued."

The appellants cite and rely upon Canavan v. Canavan, 18 N.M. 640, 139 P. 154, 155, 51 L.R.A.,N.S., 972, as being the leading case supporting their contention. They cite, quote from or discuss six other cases as authority supporting their proposition, all of which will be discussed.

While a single sentence might be taken out of the opinions in some of the cases cited by appellants which would seem to support their contention if all of the remaining parts of the opinions were ignored, a thorough examination of the whole opinion in each of the cases relied upon by appellants will disclose that none of them supports appellants' Contention A.

The case of Canavan v. Canavan, supra, was a suit brought by the wife against the husband for a divorce, division of property

and custody of minor children. The court granted an ancillary order in the form of a temporary injunction against the defendant husband for the purpose of preserving the status of the property pendente lite. The ancillary injunction was to continue in force until further order of the court. A final hearing in the main cause was had and concluded and the court entered its final decree granting a divorce, awarding custody of the children and granting the plaintiff wife judgment for $20,000 against the defendant husband and ordering that execution issue. The final decree had no provisions for any injunction in it and made no mention of the ancillary and temporary injunction which had enjoined the defendant husband from disposing of community property until further order of the court. The ancillary and preliminary injunction granted for the purpose of maintaining the status quo pendente lite would obviously be merged and dissolved after a final hearing in the main action by the entry of the final decree of the court which in no way continued the ancillary injunction. After the final hearing in the main action the court's final judgment or decree is presumed to and does contain the court's final decision; and ancillary orders made during the course of a trial are merged and dissolved unless extended and continued by the terms of the final decree. This court in the Canavan case, supra, quoted with approval the rule laid down by High on Injunctions, 4th Ed., Sec. 1503, as follows:

" 'But, when the injunction is merely ancillary to the principal relief sought and is in terms granted until further order of the court, it is regarded as abrogated by the final judgment of the court granting the principal relief sought by the action *and making no provision for continuing the injunction.*' " (Emphasis ours.)

It is noted that Mr. High announces this rule making it necessary that the final decree make no provision for the continuance of the injunction. In the present case under consideration the final decree specifically enjoined the defendants from doing the same acts enjoined by the temporary restraining order. The same rule of conduct prescribed in the temporary restraining order was carried forward in the final decree, that is, the permanent injunction. There was no material change in the rule of conduct laid down for the defendants except that the final decree added a provision or two not contained in the preliminary restraining order but all of the provisions regarding a rule of conduct prescribed in the preliminary restraining order were contained and continued in the final decree and therefore were made permanent by the final decree or permanent injunction.

In the Canavan case, supra, this court quoted from Sweeney v. Hanley, 9 Cir., 126 F. 97, 99, as follows:

" 'It will be noticed that by this final decree the injunction theretofore granted was not continued in force. Upon the entry of the final decree the temporary injunction came to an end. * * * it is a sufficient reason therefore that no such injunction was then in force; it having come to an end by the entry of the final decree in the cause, *making no provision for any injunction.*' " (Emphasis ours.)

We then state further:

"This must be so. The final decree always represents the determination of the court upon all the issues between parties, unless some of them are expressly reserved or excepted therefrom. It must of necessity require some special reservation, exception, or continuance of the court to preserve an anterior ancillary order in the form of an injunction issued for the purpose of preserving the status of property pendente lite. * * * It is to be remembered that an injunction is a rule of conduct merely imposed, for the time being, upon a litigant by the properly constituted authority. * * * In actions for civil contempt the duty commanded by the injunction no longer exists after the dissolution. In order to punish for a civil contempt, it would seem that there must be a present rule of conduct subsisting and in force together with the acts violating the same."

These statements clearly show that the rule announced in the Canavan case, supra, would not apply to the present case for the reason that here the rule of conduct prescribed by the temporary restraining order was carried into the permanent injunction; therefore the same rule of conduct prescribed by and during the life of the restraining order and which was violated by the defendants continued to exist after the entry of the decree containing the permanent injunction and at the time the defendants were charged, tried and convicted of violating the preliminary injunction. Again we refer to the Canavan case, supra, and find the following:

"In Peck v. Yorks, 32 How.Prac., N.Y., 408, the same doctrine is announced, and a very well-considered opinion is rendered by the court, in which it is said: 'An injunction, which is but an order of the court, can have no more force or extended operation after it is set aside or modified than a statute repealed or modified, in regard to acts previously done. In either case, the rule being abolished, the infraction of it is abolished also, and nothing remains on which a conviction can be based.' "

This conclusion from the New York court quoted with approval would not apply to the present case, for the New York case said:

"the rule being abolished, the infraction of it is abolished also."

In the present case the rule was not abolished; it was in full force and effect at all times and is still in full force and effect; the same rule of conduct was carried over from the restraining order into the permanent injunction. The same kind of act committed by defendants in violation of the temporary restraining order prior to the issuance of the permanent injunction would, if committed after the issuance of the permanent injunction, be a violation thereof.

The Canavan case merely followed one line of authorities, which is probably the majority rule, holding that where a defendant violates a preliminary injunction which is thereafter terminated or dissolved, either by express order or by an entry of a final judgment on the merits which does not continue the injunction or the rule of conduct prescribed by the ancillary injunction, the contempt proceeding thereafter filed charging violation of the preliminary injunction before its dissolution cannot be maintained.

There is another line of authorities supporting the opposite view, which may be regarded as the minority rule, that allows and upholds the right to try and sentence for civil contempt for the violation of a preliminary injunction if at the time of violation the preliminary injunction was valid and in full force even though such preliminary injunction was later terminated or dissolved prior to the contempt proceeding and trial. Neither of these rules, however, has any application to the present case for the reason that the rule of conduct prescribed for defendants in the preliminary restraining order was never dissolved either expressly or by implication; it was carried into and made permanent by the final decree, in the nature of a permanent injunction.

The second case relied upon by appellants is Warder v. Shufeldt, 40 N.M. 442, 62 P.2d 812, 814. This case held that an amendment of an order granting an injunction which materially changed the rule of conduct prescribed in the original order precluded the punishment for civil contempt for violation of the original order. It follows the general rule announced in the Canavan case, supra, but is not applicable here as is clearly shown by various portions of the opinion rendered by this court. Quoting from this case we find the following:

"Among other defenses the appellant contends that the order of July 19th modifying the original injunction was in effect an abrogation thereof and deprived the court of the power to punish

him, though he had violated the injunction prior to the entry of the modifying order.

"If the effect of the modifying order was to abrogate the original injunction, then appellant's position is correct.

"The amendment of an order granting an injunction, which materially changes the rule of conduct prescribed in the original order, precludes punishment for civil contempt for the violation of the original order, whether such violation occurred before or after such amendment. * * *

"We have copied in the opinion the substance of each of these orders, and as we read the modifying order it changed every rule of conduct prescribed by the original order of injunction. We are satisfied that the original order (as the court found) was in force until modified by the order of July 19, but not thereafter. * * * The original order was so changed by the modifying order that no distinct rule of conduct remained common to both. * * *"

Justice Brice, in this court's opinion on rehearing in the same case, said:

"A law can be so amended as to entirely change the rule of conduct, and an injunctive order can be so modified that the same result will follow.

We see no difference in that regard between an order dissolving an injunction and one modifying it so that the original rule of conduct is abrogated. In either case there is left no foundation for contempt proceedings.

"We are not so much concerned in regard to the correctness of the conclusions of law reached in our original opinion as we are with regard to whether any definite part of the original injunction order was continued in the modification so that it could be a basis for contempt. * * * The original rule of conduct was so materially changed by the modifying order that it was abrogated."

It is very apparent from the above-quoted opinion that if the rule of conduct prescribed by the original order of injunction had not been so materially changed by the modifying order as to amount to an abrogation we would have upheld the prosecution and conviction for contempt. It was because the original rule of conduct was changed and abrogated that there was left no basis for the contempt proceeding. Therefore, the situation in the Warder case, supra, was exactly the opposite to that which we find in the case under consideration where the original rule of conduct prescribed in the temporary restraining order was not materially changed but was carried into, continued

and made permanent by the final decree granting the permanent injunction.

The case of Lowell Bar Ass'n v. Lobe, 315 Mass. 176, 52 N.E.2d 27, cited by appellants has nothing to do with a contempt proceeding; it involved appellate procedure where defendants had appealed both from an interlocutory decree and a final decree. The court held that the final decree as modified should be affirmed and that the appeal of the interlocutory decree was improper since the disposition of the final decree was all that was necessary to determine the rights of the parties. If we look to the case of Wireless Specialty Apparatus Co. v. Priess, 246 Mass. 274, 140 N.E. 793, we may find what has been declared to be the rule with reference to civil contempts in Massachusetts. This case follows what has heretofore been referred to as the minority rule and held that a dismissal of an injunction proceeding or final disposition of a case without continuing the injunction in force does not prevent punishment for contempt for violations of the injunction while in force.

In the case of State v. Neveau, 236 Wis. 414, 295 N.W. 718, cited by appellants, a preliminary injunction pendente lite was granted but the complaint was later dismissed by final judgment on the ground that the law upon which the complaint was based was void. The court denied the right to entertain a civil contempt for the violation of the preliminary injunction after it was dissolved, holding that it was dissolved by a dismissal of the complaint in the action because no cause of action existed. Such a ruling, while in harmony with the so-called majority rule, has no application to the present case.

Appellants also cite Jones v. Jones, 75 Wash. 50, 134 P. 528. The facts in this case are very similar to the Canavan case, supra. This was a divorce action by Mrs. Jones against her husband. The court issued an ancillary injunction enjoining the husband from leaving the state. The case was tried upon its merits and the final decree rendered, which contained no injunctive provisions; it made no mention of the ancillary injunction. The Washington court merely held that the ancillary injunction against the husband, not having been carried forward into the final decree or mentioned, was by the decree which disposed of all the issues in the main case dissolved, and therefore a proceeding in contempt against the husband for having violated the preliminary injunction could not be maintained after its dissolution.

In Raphael v. Monroe, 1 Cir., 60 F.2d 16, cited by appellants, the court merely held that any power acquired by the federal court by preliminary injunction over property involved in state court proceedings was lost when the injunction was dissolved by the final decree. This case was not concerned with any contempt pro-

458

ceeding and we can find nothing in it to support the contention made by appellants.

The appellants lastly cite Commonwealth Public Service Co. v. City of Deer Lodge, 96 Mont. 48, 29 P.2d 667, 674, which involved no contempt proceeding whatsoever but did involve the validity of a contract which was made during the existence of a temporary injunction. The gist of the court's opinion in that case is found in the following statement from the opinion:

> "A preliminary injunction comes to an end by the entry of the final decree in the cause making no provision for an injunction, and no formal order of dissolution is necessary to the validity and effectiveness of the decree. * *
>
> "The preliminary injunction or restraining order upon the entry of the final decree dismissing this case was dissolved."

The case was very different from the one now being considered; it did not involve any contempt proceedings and announced a correct rule under the facts therein. In that case the final decree dismissed the cause but in our case the final decree made the temporary restraining order permanent.

We believe it is so obvious that a contempt proceeding is proper for violation of a preliminary injunction where the preliminary injunction is found to be continued in force by the provisions of the permanent injunction, that practically no appeals from such convictions are taken to appellate courts.

There are two cases, quite recent, which deal directly with this question, one of which was decided by the U. S. Circuit Court of Appeals, First Circuit, and the other by the U. S. Circuit Court of Appeals, Second Circuit. In the case of Parker v. U. S., 126 F.2d 370, 381, Parker was held in civil contempt for violation of a final decree which had been preceded by an interlocutory decree in similar terms. The court in its opinion held that Parker should be held in contempt not only for violating the final decree but also for violating the interlocutory decree. The court said:

> "Further, Parker contends, no adjudication for civil contempt of an interlocutory decree can be made after entry of a final decree; 'after the entry of a final decree an interlocutory decree becomes functus officio and so ceases to provide the necessary foundation for an order adjudicating a person in civil contempt.' No authority cited by appellant, and none that we can find, supports this proposition. It is true, a final decree merges and supersedes the terms of an interlocutory decree so that acts taking place after the date of the final decree can be adjudged in contempt only insofar as they may violate the terms incorporated in

the final decree. This is all that was decided in Gardner v. Gardner, 1882, 87 N.Y. 14, cited by appellant. In Worden v. Searls, 1887, 121 U.S. 14, 7 S.Ct. 814, 820, 30 L.Ed. 853, which was a suit for alleged patent infringement, the circuit court imposed a compensatory fine upon the defendants for violation of a preliminary injunction. Thereafter a final decree went in favor of the plaintiff, but on appeal the Supreme Court held that the final decree should be reversed and the bill dismissed. Of course, in these circumstances, the Supreme Court also reversed the interlocutory order of the circuit court adjudging the defendants in civil contempt and imposing a fine upon them payable to the plaintiff, because 'the fines were, in fact, measured by the damages the plaintiff had sustained and the expenses he had incurred. They were incidents of his claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent.' That case furnishes no support to appellant, because in the case at bar the final decree went in favor of the plaintiff and was affirmed by us on appeal. Worden v. Searls is significant, however, as indicating a reason why the district court may find it appropriate to wait until the plaintiff's right

in the main litigation has been established by final decree before adjudicating a defendant in civil contempt of an interlocutory decree, and imposing upon him a compensatory fine payable to the plaintiff, on the basis of contumacious acts committed by the defendant while the temporary injunction was in force and before it had been superseded by the final decree. Certainly, the case has no tendency to support the proposition that an adjudication for civil contempt of an interlocutory decree cannot be made after entry of a final decree."

In the case of Securities & Exchange Comm. v. Okin, 137 F.2d 862, 863, 148 A.L.R. 1019, we find that the Securities Exchange Commission filed an action to obtain a preliminary and a permanent injunction against Okin. The Commission filed a motion asking the court to adjudge Okin liable for civil contempt for violating the temporary injunction. Thereafter and before trial on the contempt charge the court modified and resettled the temporary injunction but did not materially change its provisions. Thereupon Okin appealed from the first preliminary injunction order of January 7 and the modified order of March 2 resettling the injunction. Thereafter on May 18, after trial of the case on its merits, the court entered a final judgment making the preliminary injunction permanent. The appellate court

granted the motion of the Commission to dismiss the two appeals on the ground that they were made from the preliminary injunction and the resettlement thereof and that thereafter the preliminary injunction had been made permanent. In the opinion by Judge Swan we find the following:

"Dismissal of these appeals is not prejudicial to Okin's appeal from the contempt order, for even if the preliminary injunction were erroneous, which we do not intimate, that would furnish no excuse for disobedience of it since the court had jurisdiction to grant it. Howat v. State of Kansas, 258 U.S. 181, 189, 42 S.Ct. 277, 66 L.Ed. 550; Brougham v. Oceanic Steam Nav. Co. 2 Cir, 205 F. 857; Salvage Process Corp. v. Acme Tank Cleaning Process Corp. 2 Cir. 86 F.2d 727.

"Nor can we accept the appellant's argument that resettlement of the injunction after he had committed the acts charged as a violation of it, deprived the court of power to adjudge him in contempt. Resettlement of an order may cause the prior order to become a 'nullity' for purposes of appeal. Young v. White, 158 App.Div. 763, 143 N.Y.S. 934. *But no authority has been cited, nor can be found, we believe, in support of the extraordinary contention that by obtaining a formal resettlement of an injunction,*

*the defendant secures immunity from liability for past disobedience of a provision which is continued in effect by the order of resettlement.* It is true that liability for civil contempt cannot survive reversal of the injunction decree which was disobeyed. Salvage Process Corp. v. Acme Tank Cleaning Process Corp., supra. There is no analogy, however, between that situation and the case at bar where the resettlement order made no change in the injunction provisions which Okin is found to have disobeyed." (Emphasis ours.)

We are of the opinion that appellants' Contention A in the present appeal is without reason, logic, merit or legal authority.

Appellants' second point, lettered B, reads as follows:

"The defendants were denied due process of law by being adjudged in contempt of the permanent injunction."

This contention is so erroneous and frivolous that it needs little discussion. It is based on the proposition that the appellants were found guilty of contempt for violating the permanent injunction, while the motion and charge upon which they were tried for contempt charged violations only of the temporary injunction of June 12.

In the discussion in their brief the appellants entirely ignore the express provisions of the decree of contempt from which they appeal. As is seen from the quoted portions thereof hereinabove set forth, the final decree or judgment in contempt found them specifically guilty of violating the temporary restraining order and provided for punishment therefor. The final decree did not in any manner adjudge the appellants guilty of contempt for violation of the permanent injunction. While the findings and conclusions of law filed held various acts of the defendants constituted a violation of the temporary restraining order, they went further and also held that the continuance of the same and similar acts subsequent to the entry of the permanent injunction likewise constituted a violation of the permanent injunction. But the decree of contempt adjudged the defendants (appellants) only in contempt for violation of the temporary restraining order and ignored the findings and conclusions that had been made by the court with reference to violations of the permanent injunction. Such findings and conclusions with reference to the permanent injunction, which were not noticed or mentioned in the decree of contempt, were mere surplusage and were immaterial. The findings and conclusions of the court with reference to the violations of the temporary restraining order were sufficient to support the decree of contempt. The other findings and conclusions referring to the permanent injunction, but which were not carried into the decree or judgment of contempt, may be ignored as surplusage without affecting the sufficiency of the remaining findings or the validity of the decree of contempt.

The rule with reference to findings or conclusions which are surplusage may be found in the opinion of this court in the case of Paulos v. Janetakos, 43 N.M. 327, 93 P.2d 989, where it is said:

"* * * Before considering in detail the various findings objected to, we must first inquire: Deleting entirely such findings of fact as appellant claims are objectionable, do there remain sufficient findings upon which to sustain the judgment? * * *

"* * * See 5 C.J.S., Appeal and Error, § 1787, where under a head note as follows: 'The mere making of unnecessary and superfluous findings or the presence of error in findings on immaterial, irrelevant, or purely collateral issues is harmless and non-reversible error if the judgment is otherwise sufficiently supported', it is said:

"'Reversible error cannot be found in the mere fact that the court makes superfluous and unnecessary findings.

"'A judgment supported by proper findings is not vitiated by findings on immaterial points or issues, for example, on issues outside the pleadings

or unsupported by evidence, or where, whatever the finding on the issue, it affords appellant no cause of action or ground of defense but is without legal consequence; such findings may be treated as surplusage and disregarded, not only in that action but also in subsequent litigation.

" 'However, although part of the findings are outside the issues, if, after, eliminating these findings, the remaining ones are not sufficient to support the judgment, it will be reversed.' 5 C.J.S., Appeal and Error, § 1787. * * *.

"Appellant was not prejudiced by such findings, as far as the final decision in this case is concerned, and cannot be prejudiced in the future if such findings were in fact immaterial or outside the issues. (Citing cases.)"

The appellants here had due notice of the hearing of contempt. The hearing was on the question as presented in the motion for contempt and in the order to show cause, that is, as to whether or not the appellants were in contempt for violation of the temporary restraining order. They were present in court, represented by counsel, although they withdrew voluntarily on the advice of counsel after the court overruled their motion to dismiss. Counsel for appellants in their reply brief practically admit that their Point B is without

merit and that part of the conclusions objected to by them in their brief were mere surplusage.

The final decree in the contempt proceeding is affirmed.

It is so ordered.

SADLER, McGHEE, and COMPTON, JJ., concur.

LUJAN, C. J., did not participate.