271 P.2d 1005

**ALEXANDER v. COWART.**

**No. 5749.**

Supreme Court of New Mexico.

June 7, 1954.

Rehearing Denied July 7, 1954.

Lynell G. Skarda, Clovis, for appellant.

Quinn & Cox, Clovis, for appellee.

SEYMOUR, Justice.

Plaintiff sued defendant for property damage arising out of a two-vehicle collision some ten miles northwest of Espanola, New Mexico. Complaint was based upon defendant's alleged negligence; defendant denied negligence and plead affirmative defenses of contributory negligence and last clear chance. Trial was had before the court without a jury and resulted in a judgment of $5,556.72, from which judgment defendant appeals.

The six points presented and argued by defendant may be classified generally as follows: (1) The first five points, addressed

to defendant's primary negligence, assert error as to findings of fact: (a) That certain of them are not supported by substantial evidence and are contrary to the physical facts; (b) That certain findings of fact requested by defendant were improperly refused. (2) The sixth point is addressed to the negligence of the plaintiff in support of the defenses of contributory negligence and last clear chance; the error here asserted is also directed at findings made or refused by the trial court. Further, appropriate conclusions of law flowing from the allegedly erroneous findings of fact are cited as error together with the refusal of conclusions of law requested by defendant.

Both of the vehicles were going south on U. S. highway 285, an unpaved highway approximately 24-feet wide, having a hard rock and sand surface. The accident happened in midafternoon of a clear, dry day on a level and straight section of the road. Defendant's vehicle, with an overall length in excess of 70 feet, was comprised of an International tractor towing a low-boy with a Caterpillar tractor on it, in turn towing a carry-all loaded with an A-frame. Defendant was moving heavy contractor's equipment under a special permit and was traveling at approximately 3 mph on his extreme right-hand side of the highway. The A-frame, used as a derrick upright in connection with the tractor, weighed some 2,000 pounds, was approximately 25 feet long, made of heavy 4-inch pipe, and was shaped, as indicated by its name, in the form of an "A." The legs at the bottom of the "A" were about 4 feet apart; the A-frame was lying lengthwise on the carry-all, the last of this string of vehicles, with the top or point of the "A" lashed down at the front of the carry-all, the legs projecting some 2 feet beyond the rear of defendant's rig. The carry-all had 10-inch steel side-boards, between which the body of the A-frame was riding; however, the body of the A-frame was resting on the tail-gate at the rear of the carry-all; the record does not disclose how many inches the side-boards extended above this tail-gate; the record does show that the A-frame was not lashed down at its rear or where it rested on the tale-gate; that is, it was secured at only its forward end at the head of the carry-all.

Plaintiff's vehicle was a GMC diesel truck pulling a Trailmobile van trailer full of vegetables; the over-all length was approximately 47 feet. The width of plaintiff's vehicle was 7 feet, 7 inches, and the defendant's vehicle at its widest point, the carry-all, was 9 feet, 11¼ inches.

Plaintiff's vehicle overtook defendant's rig and followed it for approximately 15 minutes or one quarter of a mile, until there was ample road visibility to insure passage safe from oncoming traffic. Plaintiff then sounded his horn, pulled to the

left and attempted to pass, moving at a rate of approximately 5 mph.

As plaintiff attempted to pass defendant, the A-frame caught the diesel exhaust stack of plaintiff's truck, bent it down, and then struck the front right-hand side of plaintiff's refrigerator trailer approximately 12 feet above the ground, and proceeded to rip the skin or side of the trailer from front to rear parallel to the road; the result was as though the trailer had been opened by a giant can opener. Since the sidewalls of this refrigerator trailer were a principal support of the body of the trailer, the whole trailer collapsed on the ground and the vehicles came to a stop within a few .seconds.

The significant findings of fact and conclusions of law given by the court and upon which defendant predicates error are as follows:

Findings of Fact:

· "10. That the A-Frame on defendant's scraper was clearly visible to plaintiff's driver and was seen by him. That said A-Frame was not seen to be skidding or sliding across the tail gate of the scraper, but just prior to this time a passenger bus driver, L. C. Ward, had been forced to pull off to the side of the road and stop to let defendant's rig go by for the reason that this "A" frame was hanging over the side of the carryall and out into the road a distance of about four feet (4')."

"13. That as plaintiff's driver attempted to pass in a legal and proper manner the "A" frame, which in some manner had either skidded on the tail-gate or been thrown by the roughness of the road over the side of the carry-all and out into the roadway and caught on the exhaust pipe of plaintiff's tractor, and after bending the exhaust pipe down, caught in the extreme right front round corner of the refrigerated van and ripped the van open from the front almost to the rear."

"17. That when both vehicles had come to rest, plaintiff's vehicle was on the extreme lefthand side of said roadway and was immovable, and defendant's rig was on the extreme righthand side of the highway and ahead of the plaintiff's rig far enough to allow a car to pass between the two rigs."

"19. That plaintiff's driver operated plaintiff's vehicle on the public highway in a careful, proper, prudent and legal manner."

Conclusion of Law:

"2. That the defendant's failure to properly secure the "A" frame to the carryall was the proximate cause of the damage to plaintiff's rig."

The trial court's oral opinion at the conclusion of the hearing reflects the theory upon which the case was decided:

"The Court:—The Court finds that some portion of the A-Frame having been so attached to the vehicle which was transporting it that it was able to protrude over into the oncoming lane of traffic for some distance, undoubtedly I would say as much as ten inches, when this accident occurred. I do not know that the flags or lack of flags would be material on that equipment. Persons using the highway with heavy wide equipment and a load of that sort they take up nearly all or half of the highway, and if some part of the cargo shifts or is able to shift and does so as to protrude into the lane of traffic of oncoming vehicles the person permitting such a condition to exist would be liable for any damage caused thereby unless there is some defense; I see none here. There is no doubt that the projection of some part of that A-Frame caused this damage. The testimony of the plaintiff's driver which I think is reasonable as he was going around this other equipment at five miles per hour according to his statement I see no reason to 'doubt him. Obviously I would think he did not see the equipment projecting. Of course, he might have noticed it and gone beyond it at the time it slipped over far enough to gouge his trailer. He is amply corroborated by the witness Ward, the bus driver, who states in positive terms he saw this same vehicle with the A-Frame projecting into his lane of traffic and pulled over and stopped because of the apparent danger and there was no flags on it. I see nothing in this testimony to indicate that the plaintiff's driver was guilty of any contributory negligence, he had his vehicle under control with due regard to the safety of the road, and nothing has been shown which would indicate any contributory negligence. The judgment will be for the plaintiff in the amounts detailed by him. There will be no award on account of exemplary or punitive damages because there is no proof here justifying such award."

■ The first five points argued by appellant, defendant · below, assert that there was no substantial evidence to support the court's findings numbered 10, 13 and 17 quoted above, and that these findings were contrary to the physical facts.

A review of the record reveals specific testimony, subject to no objections on the part of the defendant, supporting each of the facts found by the court; for instance: plaintiff's driver and the passenger bus driver, L. C. Ward, a disinterested witness, clearly testified to the facts recited

in finding 10; there was no testimony directly attacking Ward's story. As to finding 13, although there was no eye-witness at the moment of the damaging contact, the testimony of Ward comprehended in finding 10, together with undisputed testimony of others to the effect (1) that the A-frame was not lashed down at the rear, (2) that it could be moved around on the tail-gate by the strength of a single individual, (3) that the road was rough and had chuck holes, (4) that the A-frame caused the damage to plaintiff's truck (testimony of defendant's superintendent), constitutes substantial evidence to support such finding. There is similar exact testimony to support finding 17.

The foregoing means that the defendant, in order to sustain the alleged error, must show that these findings were contrary to the physical facts pursuant to the doctrine expressed as follows in the case of Ortega v. Koury, 1951, 55 N.M. 142, 227 P.2d 941, 942:

"Physical facts and conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them. When the surrounding facts and circumstances make the story of a witness incredible, or when

the testimony is inherently improbable, such evidence is not substantial."

We find ourselves unable to accept defendant's vigorous contention that the facts in this case as found by the trial court are "utterly at variance with well established and universally recognized physical laws." Crocker v. Johnston, 1939, 43 N.M. 469, 95 P.2d 214, 217. The doctrine which defendant asks us to apply is well and strictly limited by this Court in the last cited case:

"It is not enough that, measured by the physical evidence, it seems improbable that the accident occurred as testified to by witnesses who saw it. The physical facts must so speak as to show the inherent improbability of it so occurring; or, in other words, to hold otherwise and against the import of these physical facts would be to find facts utterly at variance with well established and universally recognized physical laws. * * * Or, * * * a reasonable mind must reject the testimony of witnesses as 'wholly impossible of belief', in view of the physical evidence."

In the instant case defendant argues that the weight of the A-frame, the height of the carry-all side-boards and the slow speed of his rig make it a physical impossibility for the A-frame to get outside of the retaining side-boards (except for an admitted

possible projection of the legs up to 10 inches at the rear extremity of the load). We agree with the improbability of the A-frame jumping from the tail-gate over the side-board; however, defendant is faced with the specific testimony of a disinterested witness to this exact fact, i. e., Ward's evidence as to a 4-foot projection; he is faced with his own failure to show the number of inches difference between the height of the side-board and the height of the tail-gate on which the A-frame was resting; and he is faced with the undisputed testimony that the A-frame was sufficiently movable to allow a single man to push it back and forth. With these facts in the record and the admitted character of the road, it would be presumptuous to state that it was physically impossible for the A-frame to move from side to side of the tail-gate or to jolt over the side of the carry-all and, as a result thereof, to project into the highway.

Defendant further contends that it was a physical impossibility for the two vehicles to come to rest on opposite sides of the road approximately 5 feet apart instead of something less than 2 feet apart as contended for by defendant. Obviously, on a 24-foot road with the combined width of the two vehicles totalling 17 feet, 6¼ inches, there remained substantially more than 5 feet of the highway which could be unoccupied by the two trucks. All the testimony concerning the position of the vehicles after they came to rest shows each to be on its own extreme side of the road. There is nothing impossible here. Defendant seems particularly concerned with the court's finding 17 to the effect that a car passed between the two rigs. There was conflicting evidence on the distance between the two vehicles; however, the trial court's finding states not only that each vehicle was on its own extreme side of the road, but also that defendant's rig was *"ahead of* the plaintiff's rig far enough to allow a car to pass between the two rigs." There is nothing physically impossible about this.

In short, each of the objectionable findings has specific evidence, which if believed, would support the same. Further, these findings state no facts which necessarily violate the physical laws of nature. Under such circumstances, we have no alternative other than to reject the asserted error.

■■ There are other findings objected to under these first five points of appellant, but we omit discussion of them for two reasons: They are either supported by substantial evidence or are immaterial to the decision in this case. In either event, there is no reversible error. The foregoing discussion has been in the light of existing decisions concerning the substantial evidence rule, some of which are: Renehan v. Lobato, 1951, 55 N.M. 532, 237

P.2d 100; Allen v. Allen, 1948, 52 N.M. 174, 194 P.2d 270; Kutz Canyon Oil & Gas Co. v. Harr, 1952, 56 N.M. 358, 244 P.2d 522; Southern Union Gas Co. v. Cantrell, 1952, 56 N.M. 184, 241 P.2d 1209; Petrakis v. Krasnow, 1949, 54 N.M. 39, 213 P.2d 220; Citizens Finance Co. v. Cole, 1943, 47 N.M. 73, 134 P.2d 550. As to the trial court's refusal of appellant's requested findings of fact, suffice it to say that the refused findings were diametrically opposed to or inconsistent with the facts properly found by the trial court in support of the judgment. Therefore, the refusal was not error. Wedgwood v. Colclazier, 1951, 55 N.M. 32, 226 P.2d 99; Bezemek v. Balduini, 1922, 28 N.M. 124, 207 P. 330.

We find no merit in defendant's contention that Ward, a disinterested witness, and the driver of plaintiff's equipment both testified that the point or top of the A-frame was at the rear of defendant's rig rather than at the front thereof. There was positive testimony both ways and the trial court ultimately found that the point of the A-frame was at the front instead of at the back of the carry-all. There is no rule of law requiring a court to disregard all of the testimony of a witness simply because he finds certain of that testimony to have been incorrect.

The sixth point of appellant is based upon the defenses of contributory negligence and last clear chance, and relates to the following finding of fact and conclusion of law made by the court:

Finding of Fact:

"19. That plaintiff's driver operated plaintiff's vehicle on the public highway in a careful, proper, prudent and legal manner."

Conclusion of Law:

"2. That the defendant's failure to properly secure the "A" frame to the carryall was the proximate cause of the damage to plaintiff's rig."

We shall eliminate the defense of last clear chance on the ground that there were no findings of fact made by the court or requested by the defendant which could make this doctrine applicable. Further, without deciding the question, we have grave doubt that the doctrine of last clear chance is available to the defendant as a defense. Rollman v. Morgan, 73 Ariz. 305, 240 P.2d 1196, 32 A.L.R.2d 543.

The burden of proof as to the plaintiff's contributory negligence is on the defendant. Generally speaking, the defendant relies upon the alleged physical impossibility of the A-frame being thrown or jolted into a projecting position over the highway and beyond the side-board of the carry-all. There was substantial evidence to the effect that this had happened, which evidence we have already determined was not contrary to the physical laws of nature.

Two further facts appear in the record: (1) That plaintiff was not yet following defendant's rig at the time the bus driver stopped to avoid a 4-foot projection; (2) That, while plaintiff's driver was following defendant's rig, he saw nothing projecting over the side of this rig, nor did he see the A-frame skidding or sliding on the tail-gate. The trial court, having these facts before it, found that "the A-frame, which in some manner had either skidded on the tail-gate or been thrown by the roughness of the road over the side of the carry-all and out into the roadway—caught on the exhaust pipe of plaintiff's tractor, and —caught on the extreme right front round corner of the refrigerated van and ripped the van open from the front almost to the rear." While the evidence is disputed as to how far apart the two vehicles were when they came to rest, the trial court found, on substantial evidence, that plaintiff's vehicle was on the extreme left-hand side of the roadway, while defendant's vehicle was on its own extreme side of the road. We have no right to speculate on the probability of what occurred. The burden of showing plaintiff's contributory negligence was upon the defendant; the facts were in dispute. The trial court, feeling that appellant had failed to carry the burden of proving plaintiff's negligence, refused to find contributory negligence; in so doing, he was justified. Whether or not the trial court made finding 19 concerning the due care of plaintiff is immaterial, since it was incumbent upon the defendant to carry the burden of proving plaintiff's negligence in order to defeat recovery.

The court's conclusion of law numbered 2 is not objectionable. It is based upon the findings of fact, with particular reference to those quoted, and to the further finding that the A-frame was not lashed down or secured at the end of defendant's rig.

■ We find no fault with the court's refusal to conclude as a matter of law that it was the duty of the rear driver, not only to make an audible signal, which the evidence indicates was done, but to actually receive acknowledgment of such signal by the front driver. Such a rule of law requires an unjustified extension of § 68–512(c), N.M.S.A.1941.

Concerning other cited statutes relevant to the duties of the driver of an overtaking vehicle, defendant has failed to show any violation or omission by plaintiff. In all of these contentions defendant relies upon his thesis that it was a physical impossibility for the A-frame to move suddenly and project further into the highway at the moment plaintiff was passing. He reasons, therefore, that the accident was necessarily the fault of the plaintiff in negligently cutting into the stationary A-frame. Since we have determined to our own satisfaction that it was not a physical im ·

possibility, defendant's contentions must fail.

Judgment of the trial court is affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON and LUJAN, JJ., concur.

SADLER, J., absent from the state, did not participate.