519 P.2d 1024

**TOME LAND AND IMPROVEMENT CO., INC. (NSL), a New Mexico corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**Gillie SILVA et al., Defendants-Appellees and Cross-Appellants.**

No. 9628.

Supreme Court of New Mexico.

Dec. 7, 1973.

Ahern, Montgomery & Albert, Albuquerque, for appellant.

Marchiondo & Berry, Mary C. Walters, Albuquerque, for appellees.

## OPINION ON MOTION FOR REHEARING

**PER CURIAM:**

Upon consideration of the motion for rehearing, the opinion heretofore filed is withdrawn and the following substituted therefor.

## OPINION

STEPHENSON, Justice.

This case has been here before. Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 494 P.2d 962 (1972). In that appeal, we approved the trial court's determination of corporate stock values in actions brought under art. 28 of the Business Corporation Act [ § 51–28–1 et seq., N.M.S.A. 1953 (Supp.1971)], but also said:

> "* * * we remand this case to the trial court *for the sole purpose of awarding attorneys' fees to appellants, in accordance with § 51–28–4(G)* * * *."

The italicized portion is duplicated in our mandate. "Appellants" in both instances referred to the dissenting shareholders ("the dissenters"), appellees here.

Thereafter, an evidentiary hearing was had, the parties submitted requested findings of fact and conclusions of law, the court made its decision and rendered judgment awarding attorneys' fees to the dissenters. Plaintiff-Appellant ("Tome") has appealed and the dissenters have cross-appealed.

§ 51–28–4(G), N.M.S.A.1953 (Supp.1971) provides in part:

> "* * * [B]ut if the fair value of the shares as determined materially exceeds the amount which the corporation offered to pay therefor * * * the court in its discretion may award *to any shareholder* who is a party to the proceedings * * * reasonable fees of legal counsel." (Emphasis added.)

During the course of the hearing, dissenters introduced into evidence a contingent fee contract between themselves and their attorney. There had originally been seventy-six dissenters, but some of them had settled as the litigation progressed and the offers increased, until in its final stages there were forty left. Some payments had been made to counsel under the contingent fee contract by those who had settled prior to the hearing. Tome, following introduction of the contract, commenced delving

into the amounts which counsel had been paid under the contract. This evidence was admitted over the dissenters' objection.

An expert witness, Mr. George T. Harris, Jr., a practicing attorney in Albuquerque, testified in response to a hypothetical question that a reasonable attorneys' fee would be in the neighborhood of $200,000.-00.

Following the hearing, the court made findings of fact to the effect that the case was one of first impression and required special preparation and presentation; that at all stages the case was sharply and extensively contested by counsel for all parties whose representation was of the highest professional caliber; that a substantial amount of time was devoted to the case by the dissenters' attorneys; that the dissenters were people whose economic status did not warrant representation on an hourly basis and so a contingency agreement was made. The trial court finally found that a fair fee would be $122,281.44. This finding is the focal point of this appeal.

The court correctly concluded that the sole issue was to determine the reasonable attorneys' fees in accordance with the cited statute and that that amount was $122,281.-44. Judgment was entered in favor of the dissenters for that sum.

The court's finding of fact number nine states:

"9. That from the sum received by the dissenters, Mr. Marchiondo, by the contract in evidence, receives 20% or the sum of $122,281.44. That this is a fair fee *provided that it is the total fee paid.*" (Emphasis added.)

As nearly as we can make out, in the trial court Tome was contending, in substance and effect, that after a reasonable attorney fee had been determined, the court should proceed to further determine how much has been paid under the agreement between the dissenters and their counsel, and that Tome should only be required to pay the difference. Under this argument, if the dissenters had already paid their attorney $122,281.44, presumably

Tome would owe nothing at all. This is exactly what Tome argues here. It claims that since the amount already paid the dissenters' counsel plus what he has coming under the contingent fee contract as found by the court in its finding number nine, exceeds the fee found by the court to be "fair" in that finding (which it otherwise ardently asserts is deficient for a variety of reasons), Tome owes nothing. From this mind boggling chain of reasoning, it seems that Tome seeks to take credit for amounts paid or to be paid by the dissenters, Tome's adversaries and the prevailing parties, to their attorney.

■ In view of Tome's argument, a definition of the issues seems appropriate. We see nothing wrong with the admission of the contract so long as its effect was limited to being simply an item of evidence having some probative value in resolving the issue of the amount of a reasonable attorney fee to be allowed dissenters; to be weighed and taken into account with all of the other evidence bearing on that question. Such was the purpose of its offer into evidence.

Section 51–28–4(G) provides not only that the amount of the fee is to be reasonable, but that it is to be awarded to the dissenting shareholders, not to their attorney. We observe in passing that the same result has been reached in domestic relations cases under statutes requiring husbands to pay the wife's attorney fee. We have consistently held that the allowance is not to the attorney, but to the wife. Lloyd v. Lloyd, 60 N.M. 441, 292 P.2d 121 (1956).

■ On the other hand, the amount to be paid by the dissenters to their attorney is a different matter, and is predicated upon the contract between the dissenters and their lawyer rather than upon the statute. It may be more than, the same as, or less than the amount found by the court to be reasonable under the statute. The trial court was without jurisdiction to fix the amount to be paid by dissenters to their attorney under the contract or pass upon the

reasonableness of such amounts, because that was not the issue presented and the attorney was not a party. We do not understand that the court actually attempted to make such a determination.

Thus the concept of what is reasonable under the statute, an issue between the parties to this lawsuit, and what dissenters' attorney is paid, predicated upon private negotiation and agreement between them, are two very different things. We are concerned with the former, but not with the latter.

Tome's counsel stated on oral argument that "finding of fact number nine is the cornerstone on which this appeal rests." It asserted that the matter should be sent back because finding of fact number nine, containing conflicts within itself, together with the fact that a long period of time intervened between the hearing and the finding, discloses an aura of confusion and ambiguity. We are by no means convinced that such ambiguity or confusion exists, but would observe that if it does, it ill becomes Tome to complain of it in view of the fact that it injected the false issue into the proceedings over the dissenters' persistent, but fruitless, objections.

In its brief, Tome contends that finding number nine does not support the conclusion upon which the judgment is based and that the trial court's decision is insufficient to comply with Rule 52(B) [§ 21–1–1(52)(B), N.M.S.A. 1953].

The conclusion of law states that a reasonable attorneys' fee for the dissenters is $122,281.44 and the judgment awards that sum to the dissenters. Certainly there is no ambiguity in the conclusion or the judgment.

From what we have said, the emphasized portion of the court's finding number nine, even if erroneous, was clearly immaterial and irrelevant, dealing with an issue foreign to those tendered by our mandate. If that portion of the finding is ignored as surplusage, the remaining finding supports the parallel conclusion of law and the findings and conclusions support

the judgment. This being so, any error inhering in the emphasized portion of finding number nine is harmless and does not constitute reversible error. New Jersey Zinc Co. v. Local 890 of International Union, etc., 56 N.M. 447, 245 P.2d 156 (1952). See also United Veterans Org. v. New Mexico Prop. App. Dept., 84 N.M. 114, 500 P.2d 199 (1972); Hancock v. Berger, 77 N.M. 321, 422 P.2d 359 (1967); Board of County Com'rs of Dona Ana County v. Little, 74 N.M. 605, 396 P.2d 591 (1964); Melfi v. Goodman, 73 N.M. 320, 388 P.2d 50 (1963); Visic v. Paddock, 72 N.M. 207, 382 P.2d 694 (1963); Koeber v. Apex-Albuq Phoenix Express, 72 N.M. 4, 380 P.2d 14, 2 A.L.R.3d 1368 (1963); Alexander v. Cowart, 58 N.M. 395, 271 P.2d 1005 (1954); and Paulos v. Janetakos, 43 N.M. 327, 93 P.2d 989 (1939).

Finally Tome contends that:

THE AMOUNT OF ATTORNEYS' FEES GRANTED BY THE COURT WAS UNREASONABLY EXCESSIVE CONTRARY TO THE EVIDENCE, AND IMPROPER.

Much is said about the amount of time spent by dissenters' counsel, but time spent is only one of a number of factors to be considered in setting attorneys' fees. Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572 (1943); Williams v. Dockwiller, 19 N.M. 623, 145 P. 475 (1914). It carries varying weight according to the subtle interplay of other factors in a given fact situation. We regard the argument as merely raising a claim that the court's finding is not supported by substantial evidence. We are of the opinion that it was. The issues presented by Tome's appeal are resolved adversely to it.

In a cross appeal, the dissenters assert that in fixing the amount of the fee allowed to them, the court computed 20% of the amount recovered by litigation and ignored that recovered through settlement. We agree that under the provisions of § 51–28–4(G) supra, dissenters who had been parties to this litigation were entitled to reasonable attorneys' fees whether they

were still parties at the appellate stage or not, unless such right was waived, extinguished by settlement or otherwise terminated, features not here present.

■ The difficulty with the dissenters' argument, however sound it may be from an arithmetical point of view, is that it avails them nothing under our appellate procedures. The mere fact that under the evidence the trial court could have made other and different findings more favorable to the dissenters which would have been sustained by the record does not constitute reversible error. These are matters for the trial court. Grants State Bank v. Pouges, 84 N.M. 340, 503 P.2d 320 (1972); Armijo v. Via Development Corporation, 81 N.M. 262, 466 P.2d 108 (1970). We cannot say that the court did not take into account fees for those who had settled when it made the award.

Even if we were convinced that reversible error inhered in the amount of the award, which we are not, we would not modify it, but would rather remand it for further proceedings below. This is an evolution not sought by the dissenters.

■ Dissenters also argue that they should recover interest on the award of attorneys fees from June 28, 1968, that being the date upon which interest commenced to run on the award for the fair value of their shares.

We do not agree. Interest started on that portion of the award, which was affirmed in the earlier appeal, on that day because of the provisions of § 51–28–4, subd. F, supra, which does not relate to the compensation of attorneys which is authorized by the following subsection.

■ Dissenters also urge that interest on the attorneys fees should have commenced to run from December 15, 1970, the date of entry of the judgment which was the subject of the first appeal. They assert that inasmuch as we held that judgment erroneous insofar as it denied attorneys fees, interest on the award should relate back because, but for an error of law committed by the trial judge, attorneys fees would have been included in that judgment and interest would have accrued.

This argument runs counter to the rule we adopted in Varney v. Taylor, 81 N.M. 87, 463 P.2d 511 (1969); and Bank of New Mexico v. Earl Rice Construction Co., 79 N.M. 115, 440 P.2d 790 (1968). In Varney, supra, 81 N.M. at 88, 463 P.2d at 512, we quoted with approval from Annot., 4 A.L.R. 3d 1221, 1223 as follows:

"In most cases where a money award has been modified on appeal, and the only action necessary in the trial court has been compliance with the mandate of the appellate court, the view has been taken that interest on the award as modified should run from the same date as if no appeal had been taken, that is, ordinarily, from the date of entry of the verdict or judgment. It has been so held regardless of whether the appellate court reduced or increased the original award."

But this is not what has occurred here. There was no mere modification of a money award, with nothing for the trial court to do but comply with the mandate. Rather the mandate contemplated further procedures below looking toward a determination and award of reasonable fees.

This case is thus closely akin to Varney, supra at 88, 463 P.2d at 512, in that:

"The trial court had to make additional findings and recompute damages based on findings newly made. Thus, there was more than a mere modification. Proper damages could not have been ascertained on the findings as made on February 4, 1964 (date of the first judgment)."

Dissenters' claim for interest for any period prior to entry of the judgment which we here affirm must be denied.

The dissenters are allowed $3,000.00 for the services of their attorney in this appeal.

It is so ordered.

McMANUS, C. J., and OMAN, J., concur.